UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.: 6:07-CV-1323-ORL:22KRS

KNIGHTS ARMAMENT COMPANY
a Florida sole proprietorship,

Plaintiff,

vs.

OPTICAL SYSTEMS TECHNOLOGY, INC., a
Pennsylvania corporation; OMNITECH PARTNERS,
 INC., a Pennsylvania corporation; KEYSTONE
APPLIEDTECHNOLOGIES, INC., a Pennsylvania
corporation, PAUL MAXIN, and JOHN DOES 1-50,

Defendants.
_____/
OPTICAL SYSTEMS TECHNOLOGY, INC., a
Pennsylvania corporation

Counterclaimant,

vs.

KNIGHTS ARMAMENT COMPANY, a Florida sole
Proprietorship, C. REED KNIGHT, JR. and BRIAN
STEINBERGER.

Counter-Defendants.
_____/

## MOTION TO DISMISS COUNTERCLAIM

Counter-Defendant, Brian Steinberger, pursuant to Fed.R.Civ.P. 12(b)(6), hereby

requests that this Court enter an order dismissing the Counterclaim filed by Defendant-

Counter-plaintiff Optical Systems Technology, Inc. ("OSTI") and in support states as

follows:

CASE NO.: 6:07-CV-1323-ORL:22KRS

## I.  INTRODUCTION/FACTUAL BACKGROUND.

Counter-Defendant, Brian Steinberger is an intellectual property ("IP") lawyer with a law practice based in Cocoa, Florida.  He is not alleged to be, is not and never has been an owner, employee, officer or director of Plaintiff, Knights Armament Company ("KAC").  Indeed, KAC is a sole proprietorship owned and operated by C. Reed Knight, Jr. ("Knight").  As the Counterclaim makes clear, Steinberger's sole relationship to KAC and Knight is that of attorney to a client.  In that capacity, he acts as KAC's intellectual property ("IP") counsel.  As IP counsel, Steinberger counsels KAC concerning its trademarks, patents and other IP rights.  Thus, Steinberger represents KAC in filing and/or prosecuting trademark applications and seeking to protect KAC's interests in proceedings before the United States Patent and Trademark Office ("USPTO"), that office's Trademark Trial and Appeals Board ("TTAB"), and elsewhere.

In connection with his representation of KAC, Steinberger, along with trial counsel Travis Hollifield has filed the instant lawsuit against OSTI et al. in order to protect valuable trademark and other rights of his client KAC, and to remedy actions taken by OSTI to infringe those rights. KAC, through its IP counsel Steinberger and trial counsel Travis Hollifield, has alleged causes of action against OSTI for Lanham Act trademark infringement and false advertising, trademark infringement and misleading advertising arising under Florida law, violations of FDUTPA, and claims for common law unfair competition.  Previously, Steinberger has filed Oppositions before the TTAB concerning attempts by OSTI to register marks that infringe those owned by KAC, and

2

CASE NO.: 6:07-CV-1323-ORL:22KRS

has represented KAC in responding to a Petition to Cancel KAC's registered trademark "UNS" that was filed by OSTI.

Notwithstanding his limited relationship to KAC and his sole status as an IP counsel for KAC, Steinberger now finds **himself** a Counterclaim Defendant in this litigation named in a series of state law conspiracy counts where, as the specific facts in the Counterclaim allege, all he has done is to respond to OSTI's attempt to cancel KAC's federal trademark registration on "UNS", file oppositions in the TTAB against infringing variations of KAC marks, prosecute KAC's trademarks before the Patent and Trademark Office and participate in the filing of this lawsuit. The specific operative allegations against Steinberger consist primarily of the following[1]:

---

[1] There are other allegations in the Complaint specifically identifying Steinberger however these allegations assert cursory legal conclusions:

¶ 26 "KAC has, without authorization and in concert with Knight and Steinberger, used OSTI's marks and proprietary information willfully and knowingly in an attempt to harass OSTI and to benefit from the trade secrets and trademark recognition that OSTI owns and enjoys";

¶ 27 "KAC has without authorization and in concert with Knight and Steinberger, used OSTI's 'UNS' and 'Universal Night Sight' marks in commerce to advertise, promote, retain, and obtain customers, as well as on products sold and distributed in the stream of commerce";

¶ 28 "Additionally, KAC has without authorization and in concert with Knight and Steinberger, used marks confusingly and/or substantially similar to OSTI's marks, including 'Universal Knightscope,' 'Knightscope,' and 'UKS.'...;

¶ 30 "As a result of the actions of KAC, Knight, and Steinberger, OSTI is being unlawfully deprived of the value of its trademarks and trade dress and of the goodwill that otherwise would stem from the knowledge of the true source of the OSTI products. OSTI has incurred substantial damages as a result of KAC's, Knight's, Steinberger's infringement, misappropriation, and tortious activities, including lost goodwill, damage to OSTI's business reputation, and loss of existing and potential customers"

In addition to these allegations the individual Counts pled against Steinberger, Cts. III, V and VII incorporate general non-specific allegations similar to those set forth here.

CASE NO.: 6:07-CV-1323-ORL:22KRS

¶ 16 "Steinberger is the attorney for KAC, and was personally involved in the unlawful conduct of KAC and Knight";

¶ 25 "KAC and Steinberger conspired with Knight to fulfill Knight's threat to OSTI and began attacking OSTI in every way they could, including attempting to register OSTI's marks, opposing the registration of OSTI's marks, and initiating baseless litigation against OSTI. Steinberger, among other things signed a false declaration in support of KAC's attempt to register OSTI's "StarTron" mark";

¶ 31 "In an effort to surreptiously claim rights to OSTI's "UNS" and "Universal Night Sight" marks, KAC, in conspiracy with Knight and Steinberger, filed applications with the TTAB to fraudulently register these marks in KAC's name"; and

¶ 32 "When OSTI learned of KAC's applications, OSTI filed oppositions with the TTAB to cancel said marks. [2] In response, KAC, by and through Knight and Steinberger, filed meritless oppositions to cancel OSTI's

---

[2] In ¶ 31, OSTI refers to "KAC, in conspiracy with Knight and Steinberger, filed applications(referencing "UNS" and "Universal Night Sight" with the TTAB". Presumably, this is a clerical error and OSTI means filing applications at the United States Patent and Trademark Office. This statement is further erroneous since the public record is clear that KAC initially filed trademarks on their own for "UNS" and "Universal Night Sight" with the U.S. Patent & Trademark Office. As an attorney for KAC, Steinberger took over prosecution of the filed "UNS" federal trademark, and refiled the "Universal Night Sight" federal trademark after it was inadvertently abandoned. OSTI leaves out facts that it was OSTI that initially filed a petition to cancel KAC's federally registered trademark on "UNS" and OSTI filed trademarks on these marks and variations of these marks as well as for "Universal Night Scope", which clearly conflicts with the KAC federally registered trademark on "Universal Knightscope" that OSTI does not claim ownership to. The KAC oppositions to the OSTI trademarks and this litigation were filed after OSTI petitioned the TTAB to cancel the KAC registration on UNS.

CASE NO.: 6:07-CV-1323-ORL:22KRS

applications before the TTAB for the marks "Universal Night Scope," "UNS," "MUNS," "Magnum Universal Night Sight," DUNS," and "Dualband Universal Night Sight."

OSTI has asserted three (3) counts against Steinberger arising from these allegations each sounding in conspiracy.   Count III asserts a cause of action titled "Conspiracy To Commit Trademark Infringement."  In Count V, OSTI asserts a claim for "Conspiracy to Commit Unfair Competition Under The Lanham Act."  Finally Count VII purports to allege a claim for "Conspiracy to Commit Common-Law Unfair Competition".   Thus, OSTI is proceeding against Steinberger under a theory that an attorney who has taken actions solely for the benefit of his client in filing, prosecuting and opposing trademark applications, defending his client in a trademark cancellation proceeding, and litigating may be held liable in conspiracy.   In pleading these causes of action, however, OSTI ignores well settled law that, pursuant to various legal doctrines set forth herein, an attorney is immune from liability for efforts such as these.

First and foremost, it is a basic principle of law that an attorney acting within the scope of his or her representation cannot be liable for conspiracy.  Such conduct will not, as a matter of law, support a cause of action sounding in conspiracy.  Secondly, pursuant to the Litigation Immunity privilege, there is no liability for actions taken or statements made in connection with a judicial or quasi-judicial proceeding or in actions that are necessary precedents thereto.   Thus, an attorney is immune from liability for conduct taken in actions such as the instant case, proceedings before the TTAB, or in seeking a

CASE NO.: 6:07-CV-1323-ORL:22KRS

registration, as a necessary precursor to a trademark infringement lawsuit under 15 U.S.C. §1114.  Finally, pursuant to the *Noerr-Pennington* Doctrine, a party's conduct in petitioning governmental agencies such as the USPTO and the TTAB or in seeking a judicial determination as to one's trademark rights cannot give rise to liability.

This Court should not condone OSTI's unwarranted tactic to subject Steinberger as KAC's counsel to personal liability for actions he has taken solely for the benefit of his client in protecting and securing and defending KAC's IP rights.  Instead, this Court should dismiss OSTI's claims outright because the law expressly precludes their assertion and to do otherwise would unfairly prejudice KAC's prosecution and defense of this matter.

## II.        ARGUMENT.

### A.        Standard for Motion to Dismiss

Dismissal is appropriate where, based upon a dispositive issue of law, the factual allegations of the complaint cannot support the asserted cause of action. *Nietzke v. Williams*, 490 U.S. 319, 326, (1989); *Glover v. Liggett Group, Inc*., 459 F.3d 1304, 1308 (11th Cir. 2006); *Marshall Cty Bd. of Educ. v. Marshall Cty Gas Dist*., 992 F.2d 1171, 1174 (11th Cir. 1993).  Conclusory allegations or legal conclusions masquerading as factual allegations cannot prevent a motion to dismiss. *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp.*, 711 F.2d 989, 995 (11th Cir. 1983); *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2nd Cir. 2002); *ECash*

CASE NO.: 6:07-CV-1323-ORL:22KRS

*Technologies, Inc. v. Guagliardo*, 210 F.Supp.2d 1138, 1143 (C.D.Cal. 2001); *Bell v. Harley-Davidson Motor Co.*, 2007 WL 935588 (S.D.Cal. March, 6, 2007) (slip copy). Plaintiff's complaint must set forth a prima facie case "and enough data must be pleaded so that each element of the alleged claim can be properly identified." *Quality Foods*, 711 F.2d at 995.

Additionally, the court should not ignore facts plaintiff alleged that undermine the cause of action. *Goerlich v. Davis*, 1991 WL 195772, *1 (N.D.Ill.).  Likewise, the court must not assume the plaintiff can prove facts it has not alleged or that defendants violated the asserted law in ways not alleged in the complaint. *Quality Foods*, 711 F.2d at 995.  A claim need not be obviously unsupportable or based upon an outlandish legal theory in order to be dismissed. *Nietzke v. Williams*, 490 U.S. 319, 328, 109 S.Ct. 1827 (1989) ("Nothing in Rule 12(b)(6) confines its sweep to claims of law that are obviously insupportable.")  A court may dismiss a claim even where it presents "a close but ultimately unavailing" legal theory. *Id.*

**B.     OSTI's Complaint Fails to State a Cause of Action for at Least Three Separate Reasons.**

As outlined above, the conspiracy counts alleged by OSTI are precluded by at least three separate, well established legal immunities.  There is ample, readily available

CASE NO.: 6:07-CV-1323-ORL:22KRS

precedent from this Circuit and elsewhere demonstrating that OSTI's theories of liability

are legally untenable and therefore, this Court should dismiss the Counterclaim of OSTI.[3]

**1.     An Attorney Cannot be Held Liable for Actions Taken on Behalf of his or her Client.**

OSTI's Counterclaim against Steinberger fails from the first instance because an

attorney cannot be liable for conspiracy for actions taken in the course of the attorney-

client relationship, the very situation at issue here.  Counts III, V and VII each assert that

Steinberger conspired with his client, KAC, to commit trademark infringement or unfair

competition. In each count, however, the predicate actions all consisted of steps taken by

Steinberger on behalf of KAC as part of his representation of KAC.  Because there can be

no conspiracy for actions taken within the context of the attorney client relationship, and

because as a factual matter Steinberger has not acted outside the scope of the attorney

client relationship, these causes of action fail both as a matter of law and as a matter of

fact.

**a.     An Attorney Cannot Conspire with his Client by Actions taken In the Course of Representing the Client.**

The law is clear that a charge of conspiracy against an attorney will not lie where

the alleged conspiracy consists of actions taken by an attorney on behalf of his or her

client.  As the 11th Circuit recognized when addressing a conspiracy charge founded on

42 U.S.C. §1985, "as long as the attorney's conduct falls within the scope of the

---

[3] In their Motion to Dismiss, Counterclaim-Defendants Knight and KAC have sought dismissal of the Counterclaim on the basis that it is an impermissible "shotgun" pleading disapproved of in this Circuit.  Steinberger agrees and joins in that argument as an additional basis for dismissal.

representation of his client, such conduct is immune from an allegation of a § 1985 conspiracy". *Farese v. Scherer*, 342 F.3d 1223, 1232 (11th Cir. 2003). In reaching its decision, the *Farese* court relied heavily on the reasoning set forth by the Third Circuit in their decision *Hefernan v. Hunter*, 189 F.3d 405 (3rd Cir. 1999). In *Hefernan* the court held that similar to the "intracorporate immunity doctrine" which barred conspiracy claims resting on actions between a corporation and its officers, an attorney acting on behalf of his or her client could not be liable in conspiracy. Following the *Hefernan* decision, the *Farese* court noted:

> an attorney's conduct "within the scope of representation is regulated and enforced by disciplinary bodies established by the courts." *Id.* In fact, "[a]buses in litigation are punishable by sanctions administered by the courts in which the litigation occurs." *Id.; see also Chambers v. NASCO, Inc.,* 501 U.S. 32, 46-47, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (finding that federal courts enjoy inherent powers to sanction attorney conduct and that "the inherent power extends to a full range of litigation abuses").

*Farese,* 342 F.3d at 1231. Given these protections, the reasoning behind the bar on attorney conspiracy claims was "even more compelling". *Hefernan,* 189 F.3d at 408. Furthermore, the Court alluded to the dangers of any other result to the role of attorney as zealous advocate. *Hefernan,* 189 F.3d at 408. ("The right of a litigant to independent and zealous counsel is at the heart of our adversary system and, indeed, invokes constitutional concerns."). Indeed, the *Hefernan* court noted that even where the challenged conduct violated canons of professional ethics, such conduct could not form the basis of a conspiracy claim. *Hefernan,* 189 F.3d at 413.

CASE NO.: 6:07-CV-1323-ORL:22KRS

The same principle has been repeated by numerous other courts. Thus, "when an attorney's alleged conspiratorial conduct occurs within the scope of representation, the conduct cannot be characterized as an actionable conspiracy." *Evans v. Chichester School District* 2008 WL 109677, *3 (E.D. Pa. 2008); *Hicks v. Lewis,* 904 F.Supp. 1368, 1370 (M.D. Fla. 1994)("The defendants correctly assert that an attorney is not liable for either the acts of his client, or his own acts that are committed or executed as a function of his role as attorney"); *Lipsig v. Ramlawi,* 760 So. 2d 170, 181 (Fla. 3rd DCA 2000); (Holding that conspiracy claims against attorney Lipsig failed since all of Lipsig's actions "were within the scope of his agency as Ramlawi family attorney"); *Pickard v. Maritime Holdings Corp.,* 161 So. 2d 239, 241 (Fla. 3rd DCA 1964)( "It is recognized that an attorney acting under employment, at the direction of his client and in legal manner is not liable for the consequences of his client's actions." [citations omitted]) *Gen. Refractories Co. v. Fireman's Fund Ins. Co.,* 337 F.3d 297, 313-14 (3d Cir. 2003) (applying intracorporate conspiracy doctrine to affirm dismissal of civil conspiracy claim against attorney acting in scope of representation); *Lewis v. Montgomery County,* No. 01-3193, 2002 WL 32349408, at *1 (E.D.Pa. Apr. 8, 2002) (dismissing § 1983 suit against lawyer and his employer, a law firm, because lawyers cannot form a conspiracy when acting in the attorney-client context).[4]

---

[4]  There is a limited exception that applies when an attorney has a personal stake in the issue that extends beyond the role of counsel. *Farese,* 342 F.3d at 1232; *Hefernan* at 413. Thus where an attorney is acting in a personal capacity and for his personal benefit, the actions of an attorney may form the basis of a conspiracy claim. Here based on the allegations of the Counterclaim,

10

CASE NO.: 6:07-CV-1323-ORL:22KRS

OSTI's Counterclaim makes clear that this immunity bars the instant causes of action as Steinberger's alleged actions do not support a cause of action for conspiracy against him personally.  All of the operative allegations, i.e. the filing and prosecution of trademark applications, the participation in TTAB proceedings and the filing of this litigation, are actions taken by Steinberger in the context of his representation of KAC as its IP attorney and are therefore within the scope of the attorney-client relationship. Steinberger's actions in filing and prosecuting trademark applications, participating in TTAB proceedings and filing litigation are normal work for an IP attorney.  Accordingly, OSTI's conspiracy claims against Steinberger fail as a matter of law since no conspiracy can arise as a matter of law under these facts.

### 2.      Litigation Immunity Precludes the Cause of Action Asserted Here.

Furthermore, as the allegations of the Counterclaim make clear, OSTI is not seeking to impose liability for any actions that Steinberger has taken that occurred outside the sphere of either this lawsuit, the TTAB proceedings or the filing and prosecuting of KAC's trademark applications.  The law, however, is clear that a party and its counsel remain immune from liability for actions arising out of conduct or statements which occurred in connection with litigation.  This immunity has been held to extend not only to conduct in litigation in court but to actions taken before the TTAB and those

---

Steinberger's actions clearly were for the benefit of his client and not for his own personal benefit.  See *Hefernan,* 189 F.3d at 413 ("However, the mere fact that attorneys have "mixed motives," such as "enhancing" their reputation by aggressive representation, does not remove their conduct from the scope of the agency.")

CASE NO.: 6:07-CV-1323-ORL:22KRS

taken as necessary precedents to litigation.  Thus, as above, OSTI and counsel have

ignored well settled law in bringing these conspiracy causes of action.

**a.     The Privilege Protects Statements Made in the Course of or in Connection with Judicial Proceedings**.

The litigation immunity privilege provides an absolute privilege for comments

made and actions taken during or in connection with judicial proceedings.  As the Court

in the leading Florida case on the issue, *Levin, Middlebrooks, Mabie, Thomas, Mayes &*

*Mitchell v. United States Fire Ins. Co.,* 639 So.2d 606 (Fla.1994) held:

> we find that absolute immunity must be afforded to any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement or other tortious behavior such as the alleged misconduct at issue, so long as the act has some relation to the proceeding. The rationale behind the immunity afforded to defamatory statements is equally applicable to other misconduct occurring during the course of a judicial proceeding. Just as participants in litigation must be free to engage in unhindered communication, so too must those participants be free to use their best judgment in prosecuting or defending a lawsuit without fear of having to defend their actions in a subsequent civil action for misconduct.

*Id.* at p. 608.  See also *Myers v. Hodges,* 44 So. 357 (Fla. 1907).  In *Levin,*

*Middlebrooks, Mabie, Thomas, Mayes & Mitchell v. United States Fire Ins. Co.,* 639 So.

2d. at 607-608 (Fla.1994), the Florida Supreme Court outlined the history and

applicability of the privilege and further noted its breadth protecting not just litigants, but

their attorneys as well:

> The immunity afforded to statements made during the course of a judicial proceeding extends not only to the parties in a proceeding but to judges, witnesses, and counsel as well. *Fridovich; Cox v. Klein,* 546 So.2d 120 (Fla. 1st DCA 1989); *Wright...*courts have noted that participants in

12

judicial proceedings must be free from the fear of later civil liability as to anything said or written during litigation so as not to chill the actions of the participants in the immediate claim. *Id.; Sussman v. Damian,* 355 So.2d 809 (Fla. 3d DCA 1977).

**b.     The Privilege Encompasses All Causes of Action and Extends Beyond the Courthouse Doors.**

Furthermore, the law is clear that the litigation immunity privilege is broad and encompasses all causes of action.   Indeed, the Florida Supreme Court has recently clarified the scope of the privilege and has noted that it applies to all types of claims that are based on statements or conduct connected with litigation:

> Importantly, the policy reasons for adopting a rule of immunity for actions taken in judicial proceedings focus on the judicial nature of the proceedings, not whether they were initiated under common law or statute. It is the perceived necessity for candid and unrestrained communications in those proceedings, free of the threat of legal actions predicated upon those communications, that is at the heart of the rule… We see no reason why this rationale would be limited by whether the misconduct constitutes a common-law tort or a statutory violation. The litigation privilege applies across the board to actions in Florida, both to common-law causes of action, those initiated pursuant to a statute, or of some other origin. "Absolute immunity must be afforded to any act occurring during the course of a judicial proceeding ... so long as the act has some relation to the proceeding."

*Echevarria, McCalla, Raymer, Barrier and Frappier v. Cole,* 950 So. 2d 380, 384. (Fla. 2007).   The litigation immunity privilege, furthermore, extends beyond the courthouse doors and protects statements that are merely connected with or precedent to litigation. *See Procacci v. Zacco,* 402 So.2d 425, 427 (Fla.4[th] DCA 1981) (filing of lis pendens is party judicial proceeding and within absolute privilege); *Buchanan v. Miami Herald Publishing Co.,* 206 So.2d 465, 467-68 (Fla. 3rd DCA 1968) (grand jury testimony within

13

CASE NO.: 6:07-CV-1323-ORL:22KRS

privilege); *St. Paul Fire and Marine Insurance Co. v. Icard, Merrill, Cullis & Timm, P.A.,* 196 So.2d. 219, 222 (Fla.2[nd] DCA 1967) (absolute privilege applies to statements of fact in pleadings and testimony by witnesses as long as reasonably connected with or material to the case); *Sussman v. Damian,* 355 So.2d 809, 810-11 (Fla.3[rd] DCA 1977) (attorney's statements at deposition absolutely privileged so long as relevant to case); *Gandy v. Trans World Computer Technology Group,* 787 So. 2d 116, 119 (Fla. 2nd DCA 2001) (statements made during the course of an EEOC investigation were absolutely privileged); *Stuchio v. Tinker,* 726 So. 2d 372, 373-4 (Fla. 5th DCA 1999) (Statements made by police chief in responding to child abuse investigator were absolutely privileged).

### c.    Statements Made in Connection with Quasi-Judicial Proceedings Such as Before the TTAB are Protected.

Furthermore, the law is clear that the privilege applies not only in formal judicial proceedings but also in the context of quasi-judicial proceedings. *Kidwell v. General Motors Corp.,* 2007 WL 2213324 *1 (Fla. 2nd DCA 2007)("Absolute immunity is afforded to any act occurring during the course of a judicial or quasi-judicial proceeding, regardless of whether the act involves a defamatory statement or other tortious behavior, so long as the act has some relation to the proceeding"); *Robertson v. Industrial Insurance Co.,* 75 So. 2d 198, 199-200 (Fla. 1954) (Letter to insurance commissioner intended to institute license revocation was protected activity).

14

CASE NO.: 6:07-CV-1323-ORL:22KRS

Most significantly, courts which have considered the issue have concluded that proceedings before the United States Patent and Trademark Office, such as in the TTAB constitute quasi-judicial proceedings and thus that the litigation immunity privilege applies.  First, in *Ball v. Xidex Corp.,* 967 F.2d 1440 (10th Cir. 1992), the Tenth Circuit held that proceedings before the Patent and Trademark Office were quasi-judicial in nature and therefore that "private lawyers are entitled to absolute immunity from charges of defamation based on statements in the quasi-judicial setting of PTO proceedings". *Id.* at 1445. In *Ball*, the proceedings at issue consisted of a reexamination proceeding before the U.S. Patent and Trademark Office.  Similarly, in *Baldwin v. Adidas America, Inc.,* 2002 WL 2012562, *3 (S.D. Ohio 2002) the court expressly held that statements made in connection with a cancellation proceeding before the TTAB were absolutely privileged pursuant to the litigation immunity privilege as proceedings before the TTAB were quasi-judicial in nature.[5]  Accordingly the court granted *Adidas'* motion to dismiss with

---

[5] The Ohio Court noted that:

> The Board is an administrative agency which performs a quasi-judicial function. Cancellations are initiated by the filing of a petition. *See* 37 C.F.R. § 2.111. The registrant then files an answer. *See* § 2.114. The parties conduct discovery, *see* § 2.120, and a trial is held. *See* § 2.121. The proceedings are governed by the Federal Rules of Civil Procedure. *See* § 2.116 The Federal Rules of Evidence apply at trial. *See* § 2.122. A petition for cancellation is heard by a panel of three members of the Board. *See* 15 U.S.C. § 1067. A dissatisfied party may appeal to the United States Court of Appeals for the Federal Circuit. *See* 15 U.S.C. § 1071(a). The factual findings of the Board are reviewed under the substantial evidence standard. *See, e.g., Hewlett-Packard Co. v. Packard Press, Inc.,* 281 F.3d 1261 (Fed.Cir.2002).

*Id.* at *1.

CASE NO.: 6:07-CV-1323-ORL:22KRS

prejudice since the immunity precluded the cause of action in defamation that plaintiff had asserted.  In *Zdenak Marak v. Old Navy (Apparel) Inc.,* 348 F.Supp.2d 275 (S.D.N.Y. 2004), the court applied the same rationale and granted a motion to dismiss because plaintiff's claims for tortious interference, injurious falsehood and libel arose from statements made by Old Navy during the course of an opposition and petition to cancel Marak's application and were thus privileged.

> **d.    OSTI's Claims Should be Dismissed Since Steinberger's Actions in Opposing OSTI on Behalf of KAC and Filing this Litigation are Privileged.**

The plain language of OSTI's Counterclaim forecloses any possible liability against Steinberger individually since the actions alleged arise out of protected activities. First, any cause of action arising from the mere filing of this lawsuit is barred since the predicate acts are protected, litigation related activities.  Similarly, because proceedings before the TTAB are quasi-judicial, Steinberger's actions before that body also cannot gives rise to liability.  Finally, any actions in filing or prosecuting trademark applications are unavailing to OSTI because obtaining a federal registration is a necessary precondition to enforcing a federal trademark in an action under 15 U.S.C. § 1114. Accordingly, that conduct is similarly protected by the privilege.  For this reason as well, OSTI's claims should be dismissed.

CASE NO.: 6:07-CV-1323-ORL:22KRS

**3.    The *Noerr-Pennington* Doctrine Insulates Activity Before the Trademark Office and in Litigation.**

Similarly, the *Noerr-Pennington* doctrine bars liability for any actions taken in seeking to register trademarks, to litigate them before the TTAB, or to litigate their validity in Federal court.   Accordingly, OSTI's reliance on Steinberger's trademark filings and trademark-related activities is misplaced for that reason as well.   The *Noerr-Pennington* doctrine is derived from the First Amendment and provides immunity from liability arising from a party's action in petitioning the government.   *See Eastern Railroad Presidents Conference v. Noerr*, 365 U.S. 127 (1961) (rejecting plaintiff's claims of restraint of trade through defendant's alleged publicity campaign to persuade the government to adopt favorable laws and regulations); *see also, United Mine Workers v. Pennington*, 381 U.S. 657 (1965); *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508 (1972) (extending *Noerr's* protection to statements made in the course of petitioning administrative agencies and in court).   Even where the intent of the parties is to injure or damage a competitor, the doctrine nevertheless provides immunity from liability for damages allegedly resulting from the petitioning activities.   *Noerr* at p. 138.

The immunity conferred by *Noerr-Pennington*, although initially limited to anti-trust cases, has since been regularly applied to preclude liability for governmental petitioning in numerous other contexts.   In *Computer Associates Int'l, Inc. v. Fundware, Inc.,* 831 F.Supp. 1516, 1522 (D. Col. 1993), for example, the court noted that the "First

17

Amendment bars litigation arising from injuries received as a consequence of First Amendment petitioning activities regardless of the underlying cause of action asserted by the Plaintiffs". Thus *Noerr-Pennington* has been used to bar claims for tortious interference, unfair competition and malicious prosecution. *Cheminor Drugs, Ltd. v. Ethyl Corporation et al.,* 168 F.3d 119 (3rd Cir. 1999). See also *Brownsville Golden Age Nursing Home, Inc. v. Wells,* 839 F.2d 155, 160 (3rd Cir. 1988)(statements made to government officials that led to forfeiture of nursing home license could not support causes of action for tortious interference and malicious prosecution). The doctrine has been used to defeat liability for civil conspiracy against an attorney and client for filing litigation challenging a rezoning decision. *Protect Our Mountain Environment, Inc. v. District Court for Jefferson County,* 677 P.2d 1361 (Colo. 1984)(Civil conspiracy claims against environmental group and its attorney based on the filing of a complaint challenging a rezoning plan would be barred by *Noerr-Pennington* since environmental group had absolute right to challenge the rezoning decision, unless "sham" exception applied). See also *Virtual Works, Inc. v. Network Solutions, Inc.,* 1999 WL 1074122 (E.D.Va.1999) (applying the *Noerr-Pennington* doctrine to tortious interference claims arising in the context of a trademark infringement matter); *Havoco of Am., Ltd. v. Hollobow,* 702 F.2d 643, 649 (7th Cir.1983) (applying *Noerr-Pennington* protection to claims of tortious interference with business relationships); *Baltimore Scrap Corp. v. David J. Joseph Co.,* 81 F.Supp.2d 602, 620 (D.Md. 2000), *aff'd,* 237 F.3d 394 (4th Cir.2001) (holding that *Noerr-Pennington* immunity applies to common law claims);

18

CASE NO.: 6:07-CV-1323-ORL:22KRS

*Thermos Co. v. Igloo Products Corp.,* 1995 WL 745832, *6 (N.D.Ill.1995) (holding that "attempts to protect a valid and incontestable trademark" are privileged under the *Noerr-Pennington* doctrine).

Furthermore, at least one district court has concluded that *Noerr-Pennington* would apply to bar claims for Lanham Act violations. In *Santana Products, Inc. v. Bobrick Washroom Equipment, Inc.,* 249 F.Supp.2d 463, 492-3 (M.D.P.A. 2003) the court concluded that the interests served by *Noerr-Pennington* were equally applicable to claims for Lanham Act violations and accordingly would apply to defeat a claim premised on violation of the statute.

Because *Noerr-Pennington* protects a party's action in petitioning administrative bodies for redress, the doctrine must also preclude liability against a party's lawyer for filing and prosecuting trademark applications of a client or participating in trademark opposition proceedings. Because the doctrine applies in the context of seeking redress though litigation, it applies to immunize the filing of a lawsuit.

The sole allegations against Steinberger are that he assisted his client in petitioning the government to register or oppose registration of various trademarks, defend a cancellation proceeding against KAC's registered trademark, and that he has helped initiate this litigation wherein the trademark rights of his client are at issue. Because such conduct constitutes the valid exercise of First Amendment petition rights, the conduct cannot support the claims for conspiracy-related liability asserted against Steinberger.

19

CASE NO.: 6:07-CV-1323-ORL:22KRS

**III.    CONCLUSION.**

For the foregoing reasons, Defendant Steinberger requests that this Court enter an

Order dismissing Counterclaim Plaintiff OSTI's Counterclaim and for any and all other

relief this Court deems just and proper.

Dated:  February 8, 2008                    Respectfully submitted,

/s/ Jeffrey D. Feldman
Jeffrey D. Feldman
Florida Bar No.  330302
Christopher P. Demetriades
Florida Bar No.  112917
Attorneys for Counterclaim Defendant
Steinberger
**FELDMAN GALE, P.A.**
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone No.  (305) 358-5001
Facsimile No.  (305) 358-3309
jfeldman@feldmangale.com
cdemetriades@feldmangale.com

CASE NO.: 6:07-CV-1323-ORL:22KRS

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 8, 2008, I electronically filed the foregoing *Motion to Dismiss Counterclaim* with the Clerk of the Court by using the CM/ECF system.  All counsel of record are authorized CM/ECF participants in this matter.

Travis R. Hollifield, Esq.
Hollifield Legal Centre, Suite C
147 E Lyman Avenue
Winter Park, FL 32789
Facsimile No. (407) 599-9591

J. Robert Arnett, II, Esq.
Munck Butrus Carter, P.C.
600 Banner Place
12770 Coit Road
Dallas, TX 75251
Facsimile No. (972) 628-3616

Brian R. Gilchrist, Esq.
Allen, Dyer, Doppelt,
Milbrath & Gilchrist, PA
255 S Orange Ave - Ste 1401
PO Box 3791
Orlando, FL 32802-3791
Facsimile No. (407) 843-2343


/s/ Jeffrey D. Feldman
JEFFREY D. FELDMAN