## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

KNIGHTS ARMAMENT COMPANY,       CASE NO: 6:07-cv-1323-Orl-22KRS
a Florida sole proprietorship,

        Plaintiff,

v.

OPTICAL SYSTEMS TECHNOLOGY, INC.,
a Pennsylvania corporation,
OMNITECH PARTNERS, INC.,
a Pennsylvania corporation,
KEYSTONE APPLIED TECHNOLOGIES, INC.,
a Pennsylvania corporation,
PAUL F. MAXIN,
& JOHN DOES 1-50,

        Defendants,
_____/
OPTICAL SYSTEMS TECHNOLOGY, INC.,
a Pennsylvania corporation,

        Counterclaimant,

v.

KNIGHTS ARMAMENT COMPANY,
a Florida sole proprietorship, and
C. REED KNIGHT, JR.,

        Counter-Defendants.
_____/

### MOTION TO DISMISS DEFENDANT OSTI'S AMENDED COUNTERCLAIM

      COME NOW Plaintiff/Counter-Defendant KNIGHTS ARMAMENT COMPANY

("KAC") and Counter-Defendant C. REED KNIGHT, JR. ("Knight"), by and through

their undersigned counsel, and pursuant to <u>Fed.R.Civ.P.</u> 12(b)(6) hereby respectfully

moves to dismiss the Amended Counterclaim asserted by Defendant/Counter-Plaintiff

OPTICAL SYSTEMS TECHNOLOGY, INC. ("OSTI") and as grounds therefor hereby states as follows:

1.      OSTI has filed an Amended Counterclaim.  (Doc. 22).

2.      OSTI's Amended Counterclaim attempts to assert six separate counts (referred to in the pleading as "causes of action") against Counter-Defendants KAC and Knight; to-wit:

| | |
|---|---|
| Count I: | Declaratory Judgment |
| Count II: | Trademark Infringement under the Lanham Act |
| Count III: | Unfair Competition under the Lanham Act |
| Count IV: | Common Law Unfair Competition |
| Count V: | Misappropriation of Trade Secrets |
| Count VI: | Business Disparagement |

3.      KAC and Knight argue below that OSTI's Amended Counterclaim fails to state a claim upon which relief can be granted and, as such, move for a dismissal of all counts pursuant to Fed.R.Civ.P. 12(b)(6).

## MEMORANDUM OF LAW

**I.      OSTI's Amended Counterclaim must be dismissed.**

OSTI has attempted to correct the pleading deficiencies of its original Counterclaim by serving and filing an Amended Counterclaim (Doc. 22) which remains insufficient as a matter of law.  Thus, the Amended Counterclaim must be dismissed for failure to state a cause of action as set forth in detail below.

**II.      Standard of Review.**

In evaluating a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the court must accept all the alleged facts as true, and draw all inferences from those facts in the light most favorable to the pleader.  *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Harris v. Procter & Gamble Cellulose Co.*, 73 F.3d 321, 324 (11th Cir. 1996).  A

motion to dismiss tests the sufficiency of the pleading but does not decide the merits of the case. *Milburn v. United States*, 734 F.2d 762, 765 (11th Cir. 1984). The court, however, does not generally accept conclusory allegations and unwarranted factual deductions as true. *South Florida Water Management District v. Montalvo*, 84 F.3d 402, 408 n. 10 (11th Cir. 1996); *Gersten v. Rundle*, 833 F.Supp. 906, 910 (S.D. Fla. 1993).

Moreover, a court may not assume that a pleader can prove facts it has not alleged or that the opposing party has violated laws in ways that have not been alleged. *Associated Gen. Contractors of Calif., Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983); *Beck v. Interstate Brands Corp.*, 953 F.2d 1275, 1276 (11th Cir. 1992)(per curiam). Nor is the court bound to accept as true a legal conclusion that is couched as a factual allegation. *B.H. Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 293, 92 L.Ed.2d 209 (1986). Although the federal rules embrace a liberal pleading standard, bald assertions and conclusions of law will not defeat a proper motion to dismiss. *Leeds v. Meltz*, 85 F.3d 51, 53 (2nd Cir. 1996).

Finally, in the context of a counterclaim, the dismissal of a counterclaim is warranted under Fed.R.Civ.P. 12(b)(6) where there is a dispositive legal issue which precludes relief. *Whitney Information Network, Inc. v. Gagnon*, 353 F.Supp.2d 1208, 1210 (M.D. Fla. 2005).

## III.    Count I – Declaratory Judgment.

For the sake of brevity, Plaintiff will not set forth in its entirety each individual allegation of OSTI's Count I herein (or for that matter all other allegations in each of the counts examined in this Motion) but will instead focus upon the objectionable portions.

OSTI's Count I fails initially because it does not notify this Court or the Counterclaim Defendants what statute it seeks relief under. A litigant that seeks a declaratory judgment from a federal court sitting in Florida may elect to attempt to state a claim under the federal Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201-2202 or the Florida Declaratory Judgment Act ("FL-DJA"), Fla. Stat. §§ 86.011-86.111, *et seq*. It is important for a party opposing a claim for declaratory judgment to know which statutory authority the pleader is proceeding under since the statutes, while similar in some respects, do have differing scopes and analytical approaches.

### A.    Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201-2202.

28 U.S.C. § 2201(a) provides, in relevant part:

> "In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought ...."

In all cases arising under the DJA the threshold question is whether a justiciable controversy exists. *Miccosukee Tribe of Indians of Florida v. U.S.A.*, 420 F.Supp.2d 1324, 1342 (S.D. Fla. 2006) citing *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 272 (1941); *United States Fire Ins. Co. v. Caulkins Indiantown Citrus*, 931 F.2d 744, 747 (11th Cir. 1991)(citations omitted). Congress limited federal jurisdiction under the DJA to actual controversies, in statutory recognition of the fact that federal judicial power under Article III, Section 2 of the United States Constitution extends only to concrete "cases or controversies." *Id.* citing *Tilley Lamp Co. v. Thacker*, 454 F.2d 805, 807-08 (5th Cir. 1972).

In order to determine whether "a case or controversy" exists under the DJA, a two-element test is employed where a pleader must show by a preponderance of the evidence that at the time it filed its pleading:

(1) the defendant had made an explicit threat or acted in a way that made the plaintiff reasonably apprehensive, on an objective basis, that it may face infringement litigation; and

(2) the plaintiff had engaged in present activity that could constitute infringement [or other adversarial conflict] or had taken concrete steps with the intent to conduct such activity.

*Johnson & Johnson Vision Care, Inc. v. CIBA Vision Corporation*, 2005 WL 1863375 *1-2 (M.D. Fla. 2005) citing *Teva Pharm. USA. Inc. v. Pfizer Inc.,* 395 F.3d 1324, 1331-1332 (Fed. Cir. 2005); see also *Marrero Enterprises of Palm Beach, Inc. v. Estefan Enterprises, Inc.*, 2007 WL 1490994 *1 (S.D. Fla. 2007).  This determination of a "case or controversy" is a question of law.  *Johnson & Johnson* supra citing *Medlmmune, Inc. v. Centocor, Inc.,* 409 F.3d 1376, 1378 (Fed. Cir. 2005).

**B.     Florida Declaratory Judgment Act ("FL-DJA"), Fla. Stat. §§ 86.011-86.111, *et seq*.**

Pursuant to FL-DJA, Fla. Stat. §§ 86.011-86.111, *et seq*., a trial court:

"[M]ay render declaratory judgments on the existence, or nonexistence:

(1) Of any immunity, power, privilege, or right; or

(2) Of any fact upon which the existence or nonexistence of such immunity, power, privilege, or right does or may depend, whether such immunity, power, privilege, or right now exists or will arise in the future."

See Fla. Stat. § 86.011 (2007).  Furthermore, Fla. Stat. § 86.021 (2007), instructs in pertinent part:

"Any person...whose rights, status, or other equitable or legal relations are affected by a statute...may have determined any question of construction or validity arising under such statute...and obtain a declaration of rights, status, or other equitable or legal relations thereunder."

Additionally, other provisions of Chapter 86 of the Florida Statutes deal with non-exclusive enumeration (§ 86.051), supplemental relief (§ 86.061), jury trials (§ 86.071), costs (§ 86.081), types of parties that may join action (§ 86.091), liberal construction (§

86.101), and existence of other remedies (§ 86.111).

The purpose of a declaratory judgment action under the FL-DJA is to afford parties relief from insecurity and uncertainty with respect to rights, status, and other equitable or legal relations. *Olive v. Maas*, 811 So.2d 644, 648 (Fla. 2002) citing *Santa Rosa County v. Administration Commission,* 661 So.2d 1190,1192 (Fla. 1995).

Where a state law claim is brought pursuant to the FL-DJA in federal court, federal jurisdiction may be premised on diversity of citizenship. Under this type of claim, Florida law governs and federal case law interpreting the federal DJA is not applicable. *Marco Island Cable, Inc. v. Comcast Cablevision of the South, Inc.*, 509 F.Supp.2d 1158, 1163 (M.D. Fla. 2007) citing *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Hartford Accident & Indem. Co. v. Beaver,* 466 F.3d 1289, 1291 (11th Cir. 2006).

The seminal description of a proper declaratory judgment action in Florida is set forth in *May v. Holley,* 59 So.2d 636 (Fla. 1952):

> "Before any proceeding for declaratory relief should be entertained it should be clearly made to appear that there is a bona fide, actual, present practical need for the declaration; that the declaration should deal with a present, ascertained or ascertainable state of facts or present controversy as to a state of facts; that some immunity, power, privilege or right of the complaining party is dependent upon the facts or the law applicable to the facts; that there is some person or persons who have, or reasonably may have an actual, present, adverse and antagonistic interest in the subject matter, either in fact or law; that the antagonistic and adverse interests are all before the court by proper process or class representation and that the relief sought is not merely the giving of legal advice by the courts or the answers propounded from curiosity. These elements are necessary in order to maintain the [status] of the proceeding as being judicial in nature and therefore within the constitutional powers of the courts."

*Marco Island* at 1163 citing *May* supra at 639. Thus, "there must be a bona fide need for such a declaration based on present, ascertainable facts or the court lacks jurisdiction to

render declaratory relief there still must exist some justiciable controversy between adverse parties that needs to be resolved for a court to exercise its jurisdiction." *Id.* quoting *Martinez v. Scanlan,* 582 So.2d 1167, 1170-71 (Fla. 1991). Where there is no bona fide, actual, or present need for a declaration, a court lacks jurisdiction to grant relief under the FL-DJA. *Id.* citing *Santa Rosa County v. Administration Comm'n, Div. of Admin. Hearings,* 661 So.2d 1190 (Fla. 1995). A pleader must show that a "case or controversy" exists between the parties to the action and that such case or controversy continues from the commencement through the existence of the litigation. *Id.* at 1164 citing *Ferreiro v. Phila. Indemn. Ins. Co.,* 928 So.2d 374, 377 (Fla. 3rd DCA 2006).

> **C.** **Analysis of Count I with respect to choice of law/identification of statute issue.**

With respect to Count I of the OSTI Amended Counterclaim, OSTI has failed to identify whether it is seeking to proceed under the federal DJA, the FL-DJA, or some other authority. Neither the Counter-Defendants nor this Court can ascertain whether federal or state case law will impact an analysis of OSTI's Count I since OSTI has not indicated which statutory authority it is attempting to invoke. As such, Count I should be dismissed.

> **D.** **Count I also fails to state a claim for a declaration of rights pertaining to "ownership of technology."**

There are problems with Count I beyond the failure to identify the law under which it seeks to proceed. Namely, in Count I of the Amended Counterclaim, OSTI alleges that:

> 1.   it "created" and "owns" (para. 37),
> 2.   KAC and Knight "dispute OSTI's ownership of" (para. 38), and
> 3.   it "seeks a declaration that it is the rightful owner of" (para. 39)…

…some type of "technology" for "night vision devices." *See* Doc. 22. Counter-Defendants are unaware of any type of legitimate declaratory claim that can be brought

regarding "technology ownership" especially where the "technology" is not properly identified.  Typically, claims relating to "technology ownership" would amount to a "claim or controversy" for purposes of declaratory relief only where the technology is alleged to be protected under a validly issued patent owned by the pleader, where non-patented secret technology is alleged to have been misappropriated, or some tangible property is alleged to have been stolen.  However, where allegedly secret non-patented technology has been publicly disclosed by circulating it in the ordinary course of commerce or by the publication of a patent application, there is, as a matter of law, nothing that can be misappropriated.  *See*, e.g., *Kewanee Oil Company v. Bicron Corporation*, 416 U.S. 470, 476 (1974).

### E.   Analysis of OSTI's Count I seeking a declaration that it "owns" certain "technology".

OSTI's apparently believes that an alleged use of unpatented and publicly distributed "technology" supposedly owned by OSTI is somehow illegal or unfair.  As set forth in *Kewanee Oil*,  it is neither.

After a thorough review of Paragraphs 1-35 (which were incorporated by reference into Count I – see para. 36), it appears that OSTI's supposed "technology" as that term is referenced in Count I could be any number of things.[1]

---

[1]  To-wit: OSTI's "technology" may relate to a single "clip-on in line night vision sight for use with a daylight scope on military rifles" (singular) or other "night vision devices" (plural) (para. 7), "additional devices utilizing the same or similar technology" (plural) (para. 8), "night vision devices" (plural), a "night vision device" (singular), and "technology embodied in such devices" (plural) (para. 13), "optical or night vision products" (plural) (para. 14), "proprietary and confidential methods and information" and "night vision devices" (plural) (para. 16), "proprietary and confidential information" (para. 17), "proprietary information and intellectual property" (para. 18), "design and technology utilized to manufacture its night vision devices" such as "sample units…, proprietary drawings, designs, testing techniques, assembly methods, and similar proprietary information" (para. 19), "valuable drawings, designs, materials, testing techniques, and assembly methods" which "constitute trade secrets and proprietary and confidential information" (para. 20), "superior technology" (para. 21), "technology" and "ownership of technology" (para. 22), "technology ownership" and "repeated attempts to steal OSTI's technology" (para. 23), "trade secrets" (para. 24), "proprietary information" (para. 25), and "proprietary and confidential information and intellectual property" (para. 28).  *See also* para. 40: "unique night vision device (singular) and its progeny (plural)."

The mish-mash of allegations leaves the Counter-Defendants in a quandary as to how to defend Count I since it is absolutely unclear what "technology" OSTI is claiming that this Court should declare that it "owns" and under what "ownership" theory (i.e., owner of a patent, trade secret, or tangible property) it is proceeding.   There is no allegation that any of the foregoing items are protected under a patent owned by OSTI. While there are brief references to items that allegedly comprise trade secrets (e.g., para. 20), it is clear by reviewing Paragraphs 1-35 that OSTI has manufactured, sold, and distributed products embodying the allegedly secret "technology" in commerce for over a decade (perhaps since 1996 or 1997 – *see* paras. 7 and 14) thereby destroying any and all supposed trade secret character.  *Skoog v. McCray Refrigerator Company*, 211 F.2d 254, 257 (7th Cir. 1957)("knowledge cannot be placed in the public domain and still be retained as a 'secret'").

As such, because Count I seeks a declaration that OSTI "owns" some ill-defined "technology" separate and apart from its alleged ownership of certain trade dress and trademarks, the count should be dismissed for failure to state a claim.

**IV.     Count II – Trademark Infringement under the Lanham Act.**

OSTI has alleged in paragraph 46 of Count II that KAC has engaged in trademark infringement in violation of 15 U.S.C. § 1114(1) which paragraph references certain actions allegedly attributable to KAC "as set forth above" which includes each allegation of Count II (paras. 42-45) which, in turn, incorporates all allegations of paras. 1-35 (see incorporation language in para. 42).  Confusingly included in this count is an allegation at para. 43 that KAC unlawfully copied OSTI's "trade dress."  Also, in para. 45, OSTI alleges that KAC has

engaged in a "false designation of origin" in violation of Section 43(a) of the Lanham Act and 15 U.S.C. § 1125(a).

As an initial matter, 15 U.S.C. § 1114(1) is the statute that provides authority for a pleader with a registered trademark to sue an opponent in a civil action pertaining to infringement of that registered trademark -- not for false designation of origin or for trade dress infringement.  The latter two concepts are the hallmark of a 15 U.S.C. § 1125(a) claim.  *See*, e.g., *Optimum Technologies, Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1238-39 (11th Cir. 2007)(analyzing "trademark infringement" count brought under 15 U.S.C. § 1114(1) as distinct from "unfair competition" and "trade dress infringement" counts brought under the false designation of origin statute at 15 U.S.C. § 1125(a)).  As such, OSTI has improperly combined separate Lanham Act theories arising under different statutory sections into one count.

Even if the improper language relating to false designation of origin or for trade dress infringement were stricken, problems remain with OSTI's Count II.

First, a claim for trademark infringement under 15 U.S.C. § 1114(1) requires a pleader to allege that they possess identifiable underline registered trademarks, *PetMed Express, Inc. v. Medpets.com, Inc.*, 336 F.Supp.2d 1213, 1218 (S.D. Fla. 2004)(15 U.S.C. § 1114(1) claims relate to alleged infringement of a "registered" mark); *Custom Manufacturing and Engineering, Inc. v. Midway Services, Inc.*, 508 F.3d 641, 647 (11th Cir. 2007)(claims that relate to unfair competition as a result of trademark infringement of unregistered trademarks are brought under 15 U.S.C. § 1125(a)).

Here, OSTI has not alleged that it possesses any registered trademarks at all.  The mere fact that OSTI alleged that it previously filed a petition to cancel KAC's registration of

the "UNS" mark and that OSTI applied for (but did not receive) federal trademark registrations for various other names (*see* para. 31 of Doc. 22) is not sufficient for it to be able to sue KAC for infringement of a registered trademark.  *Hako-Med USA, Inc. v. Axiom Worldwide, Inc.*, 2006 WL 3755331 *6 FN7 (M.D. Fla. 2006)(magistrate report & recommendation)(a petition pending in the TTAB to cancel a registered trademark has no bearing on a court's analysis of a trademark infringement claim under 15 U.S.C. § 1114) adopted and confirmed *Hako-Med USA, Inc. v. Axiom Worldwide, Inc.*, 2006 WL 3760416 *1 (M.D. Fla. 2006).

Because OSTI has not alleged that it owns any registered trademarks as opposed to alleging that it has some rights to use (and exclude others from using) certain unregistered names, then Count II relating to registered trademark infringement under 15 U.S.C. § 1114(1) must be dismissed with prejudice.

## V.     Count III – Unfair Competition under the Lanham Act.

OSTI has alleged in paragraph 51 of Count III that KAC has engaged in unfair competition in violation of 15 U.S.C. § 1125(a) which paragraph references certain actions allegedly attributable to KAC "as set forth above" which includes each allegation of Count III (paras. 47-50) which, in turn, incorporates all allegations of paras. 1-35 (see incorporation language in para. 47).  Included in this count is an allegation at para. 48 that KAC unlawfully copied OSTI's "trade dress."  Also, in para. 50, OSTI alleges that KAC has engaged in a "false designation of origin" in violation of Section 43(a) of the Lanham Act and 15 U.S.C. § 1125(a).  Curiously, the allegations set forth in Count III are exactly the same as those set forth in Count II except for the final paragraph in each count.  This results in much confusion since, as stated above, the concept of (registered) trademark infringement

under 15 U.S.C. § 1114(1) and theories such as "unfair competition", "false designation of origin", "trade dress infringement", and "dilution" under 15 U.S.C. § 1125(a) arise under distinct parts of the Lanham Act.

Even more confusing is that OSTI conflates separate theories under 15 U.S.C. § 1125(a) into a single count (Count III).  The concept of an "unfair competition" claim and a "trade dress infringement" claim under 1125(a), although presented in one count here, actually require distinct pleading predicates.  This is also true with respect to a theory that is viewed as a form of unfair competition; namely, "false designation of origin."  A review of the pleading requirements for these various theories is set forth below.

### A.    "Unfair Competition" under 15 U.S.C. § 1125(a).

To properly plead an "unfair competition" claim under 15 U.S.C. § 1125(a), a pleader must allege (1) that it had prior rights to the mark at issue and (2) that its opponent adopted a mark or name that was the same, or confusingly similar, to the pleader's mark such that consumers were likely to confuse the two.  *PetMed Express, Inc.*, supra, 336 F.Supp.2d 1213, 1218 (S.D. Fla. 2004) citing *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1194 (11th Cir. 2001).

### B.    "False Designation of Origin" under 15 U.S.C. § 1125(a).

The Eleventh Circuit views a "false designation of origin" claim under 15 U.S.C. § 1125(a) as essentially the same thing as "unfair competition" under that same section. Namely, to properly plead a "false designation of origin" claim, a pleader must allege the same two elements as an "unfair competition" claim which, in sum, constitute allegations that the opponent engaged in the behavior of "passing off" or "palming off" which "occurs when a producer misrepresents his own goods or services as someone else's."  *Custom*

*Manufacturing and Engineering, Inc.*, supra, 508 F.3d 641, 647-48 (11th Cir. 2007).  Both of the foregoing concepts (unfair competition and false designation of origin) relate to an alleged misuse by an opponent of a pleader's unregistered trade name or other business identifier (symbol, slogan, et al.) and constitute a single theory of recovery and have nothing to do with trade dress which is a different concept altogether although it arises out of the same statutory section.

As such, this confusing conflation of legal theories renders OSTI's attempt to plead a cause of action in Count III hopelessly unanswerable since it is a quagmire containing bits and pieces of various disparate claims.

**C.     "Trade Dress Infringement" under 15 U.S.C. § 1125(a).**

The term "trade dress" refers to the total image of a product and may include features such as size, shape, color combinations, texture, and graphics.  *Callaway Golf Co. v. Golf Clean, Inc.*, 915 F.Supp. 1206, 1212 (M.D. Fla. 1995) citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 764 FN1, *reh'g denied*, 505 U.S. 1244 (1992).

Until the year 2000, to properly plead a "trade dress infringement" claim under 15 U.S.C. § 1125(a), a pleader must have alleged that (1) the trade dress of two products is confusingly similar, (2) the features of the trade dress are primarily non-functional, and (3) the trade dress is inherently distinctive or has acquired secondary meaning.  *Levenger Company v. Feldman*, 516 F.Supp.2d 1272 (S.D. Fla. 2007) citing *Epic Metals Corp. v. Souliere*, 99 F.3d 1034, 1038 (11th Cir. 1996).  In 2000, the U.S. Supreme Court drew an important distinction between trade dress claims based upon:

> (1)     product packaging trade dress (such as the "garish" packaging of Tide liquid laundry detergent in bright and squat bottles or the "festive" overall dining atmosphere of a chain of Mexican restaurants

at issue in the *Two Pesos* supra case) which may be alleged to be either inherently distinctive <u>or</u> have acquired secondary meaning;

and

(2)    product design trade dress (such as clothing decorated with various appliqués) which claim will <u>only</u> survive where the trade dress is alleged to have acquired secondary meaning since product design, like color, can never be inherently distinctive.

*Wal-Mart Stores, Inc. v. Samara Brothers, Inc.*, 529 U.S. 205, 212-215 (2000).  The lesson of *Wal-Mart* for pleaders of trade dress infringement counts in federal court is that if the pleader seeks to properly allege such a count against an opponent where the trade dress at issue relates to the pleader's product design as opposed to its packaging, <u>the pleader must allege that the design has acquired secondary meaning</u>.

OSTI has not alleged that KAC has violated any rights to trade dress in product packaging.  The only allegations in the Amended Counterclaim involving trade dress are focused upon product design described as "distinctive material finish, shape, and exterior design of a night vision device" (paras. 28 and 48 of Doc. 22).  Pursuant to *Wal-Mart*, because trade dress in product design cannot be, as a matter of law, inherently distinctive then OSTI's allegation that the finish, shape, and design of its night vision device is distinctive, absent an allegation that the design has acquired secondary meaning, is insufficient to state a claim for trade dress infringement.  The only allegation in Doc. 22 pertaining to secondary meaning is found in paragraph 12 relating solely to certain word marks which, of course, has nothing to do with trade dress.

Next, OSTI failed to allege that its product design trade dress is primarily non-functional which, of course, is one of the *prima faci*e allegation requirements in a trade dress infringement case.  *Wal-Mart* <u>supra</u> at 212-15.

14

Moreover, OSTI alleges in para. 48 that KAC "slavishly and unlawfully copied" the product design trade dress at issue.  Unlawful copying in federal intellectual property law is governed by the United States Copyright Act, 17 U.S.C. § 101 *et. seq.* (as amended).  For purposes of an alleged 15 U.S.C. § 1125(a) trade dress infringement claim, the proper allegation is not "copying"; instead, it is that the opponent's trade dress is "confusingly similar" to the pleader's trade dress and that the opponent actually used the "confusingly similar" trade dress in commerce to the detriment of the pleader.  Illegal copying is simply not a part of trade dress analysis.  While OSTI has alleged that KAC "copied" and "used" OSTI's trade dress in commerce (para. 28), there is no allegation that any purported copying by KAC resulted in KAC's trade dress being "confusingly similar" to OSTI's trade dress as opposed to the allegation in para. 28 (and elsewhere) that KAC used certain word marks that are "confusingly similar" to names used by OSTI.  Again, there is a distinct analytical and pleading dichotomy between word marks and trade dress that OSTI has failed to bridge.  As such, Count III must be dismissed.

## VI.   Count IV – Common Law Unfair Competition.

OSTI has alleged in paragraph 55 of Count IV that KAC has engaged in unfair competition in violation of the common law of (apparently) Florida which paragraph references certain actions allegedly attributable to KAC "as set forth above" which includes each allegation of Count IV (paras. 52-54) which, in turn, incorporates all allegations of paras. 1-35 (see incorporation language in para. 52).  Included in this count is an allegation at para. 53 that KAC unlawfully copied OSTI's "trade dress."  The allegations set forth in Count IV are exactly the same as those set forth in paras. 43-44 of Count II and paras. 48-49 of Count III except that in para. 54 of Count IV, OSTI adds: "Such use by KAC constitutes

unfair competition under common law." This pleading results in much confusion since, by basically parroting the language of Counts II and III, OSTI appears to be trying to bootstrap the elements of a (registered) trademark infringement claim under 15 U.S.C. § 1114(1) and claims such as "unfair competition", "false designation of origin", and "trade dress infringement" under 15 U.S.C. § 1125(a) into its common law unfair competition claim.

      **A.**    **Pleading requirements in support of a *prima facie* case of Common Law Unfair Competition.**

To properly plead a claim of common law unfair competition, Florida law requires that a pleader establish (1) deceptive or fraudulent conduct of a competitor and (2) likelihood of consumer confusion. *M.G.B. Homes, Inc. v. Ameron Homes, Inc.*, 903 F.2d 1486, 1494 (11th Cir. 1990); *Whitney Information Network, Inc. v. Gagnon*, 353 F.Supp.2d 1208, 1212-1213 (M.D. Fla. 2005).

It must be noted that courts that have surveyed this area of the law consistently find that the "gist" of unfair competition in Florida involves "palming off." *B.H. Bunn Co. v. AA Replacement Parts Co.*, 451 F.2d 1254, 1262 (5th Cir. 1971); *Lumberman's Mutual Casualty Co. v. Lumber Mutual Casualty Ins. Co.*, 17 So.2d 615 (Fla. 1944); *Stagg Shop of Miami, Inc. v. Moss*, 120 So.2d 39 (Fla. 2nd DCA 1960). Namely, no one should sell goods in such a way as to make it appear that they come from some other source. The simplest form of this is to use the name or trademark of another. *Bunn* supra at 1259. As such, Courts virtually always enumerate the elements of unfair competition in the context of underlying acts of trademark or trade dress infringement. *Alphamed Pharmaceuticals Corp. v. Arriva Pharmaceuticals, Inc.*, 432 F.Supp.2d 1319 (S.D. Fla. 2006).

Additionally, it is clear that in order to properly state a claim for unfair competition, the pleading party must allege that it competes with its opponent <u>for a common pool of</u>

customers.  *Home Design Services, Inc. v. Park Square Enterprises, Inc.*, 2005 WL 1027370

*13-14 (M.D. Fla. 2005)(unfair competition claim failed because real or potential customer

pool was <u>not</u> similar between architectural design firm that designed homes for builder

clients and a homebuilder that designed and built homes for end-use homeowner clients).

     **B.**     **Analysis of Count IV.**

     Based in part upon the pleading problems identified hereinabove with respect to

Counts II and III and in part for the reasons set forth below, Count IV of OSTI's Amended

Counterclaim is insufficient as a matter of law.   In Count IV, OSTI does allege in

conclusory fashion that KAC's use of certain word marks (but not trade dress) may deceive

"customers and potential customers of the parties" (para. 54), however, there is no allegation

that OSTI and KAC actually compete for a common pool of customers as required by *Home

Design Services* <u>supra</u>.  The only other allegations in the Amended Counterclaim (which are

incorporated into Count IV; i.e., paras. 1-35) that even address customers or consumers are

in para. 53 (use of word marks caused "consumers" to believe KAC's devices are affiliated

with OSTI's devices -- nothing about whether these "consumers" are from a common pool

of customers), para. 29 (KAC has caused "loss of actual and potential customers" -- nothing

about whether these "customers" are from a common pool of customers), and para. 26

(KAC used word marks to "retain and obtain customers" -- nothing about whether these

"customers" are from a common pool of customers).

     This needed allegation that OSTI and KAC compete for a common pool of

customers is particularly important in this case since OSTI has admitted that KAC is a

"major" and "established" supplier to KAC's own military customers whereas OSTI has no

such established relationship with that particular customer pool.  *See* Doc. 22 at para. 14.  It

may very well be that OSTI believes that it has cultivated a pool of customers for its devices with other types of customers (for instance, companies that use or sell night vision devices for use with weapons in the non-military government, law enforcement, hunting, or home protection markets) or others outside of the pool of military customers that KAC possesses. If that is the case, and if OSTI's claim of common law unfair competition is related to a pool of customers that KAC does not compete with OSTI for, then OSTI cannot state a claim under this state law theory.  Just as in *Home Design Services* supra where two design firms served different markets (i.e., designs for developers -vs- designs for homeowners), it may well be that, from OSTI's perspective, OSTI and KAC are manufacturers of devices that also serve wholly different markets (i.e., OSTI's non-military government, law enforcement, hunting, or home protection markets -vs- KAC's military market).[2]

The fact that there is no affirmative allegation that OSTI competes with KAC for a common pool of customers renders insufficient the pleading of Count IV of the Amended Counterclaim and it must be dismissed.

Finally, Count IV must be stricken because OSTI has improperly made a claim for an award of attorney's fees in its strangely pled "Damages" clause.  *See* para. 63 of "Damages" clause which incorporates all preceding averments and counts (including Count IV) and which curiously requests attorney's fees for all counts under 15 U.S.C. § 1117(a) which, of course, has nothing to do with a common law unfair competition claim.

---

[2]   KAC has alleged in its Complaint that KAC and OSTI <u>currently</u> compete for a common pool of customers, however, this allegation does not relieve OSTI from its burden to affirmatively allege the same element to support its common law unfair competition claim particularly where, as here, OSTI only conditionally admitted KAC's allegation. *See* KAC's Complaint (Doc. 1 – para. 25 alleging competition <u>now</u> for common pool of customers; *compare with* OSTI's Answer (Doc. 6 – para. 25 admitting only that KAC and OSTI have been [past tense] competitive bidders for U.S. government [not necessarily military] contracts -- not that the parties compete for a common pool of customers as alleged by KAC).

There is no precedent that supports OSTI's demand.  Unfair competition is a Florida common law tort and, because our courts follow the so-called American rule rather than the English rule, attorney's fees are not awarded to the prevailing party or prevailing plaintiff. *May v. Nygard Holdings*, *Ltd.*, 2005 WL 2850318 *3 (M.D. Fla. 2005) <u>citing</u> *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240 (1975).

Therefore, OSTI's Count IV is wholly insufficient and requests relief it is not entitled to and, therefore, must be dismissed.

## VII.    Count V – Misappropriation of Trade Secrets.

Plaintiff has served and filed a count titled "Misappropriation of Trade Secrets" that is insufficient as a matter of law.  First of all, for this count, OSTI seeks relief under a statute it refers to as the "Uniform Trade Secrets Act."  *See* Doc. 22, para. 57.  There is no cause of action or relief available under that model Act.  *Amalgamated Industries, Inc. v. Tressa, Inc.*, 69 Fed.Appx. 255, 261 (6th Cir. 2003)("Uniform Trade Secrets Act" is merely a suggested model act originally created in 1979 by the National Conference of Commissioners on Uniform State Laws; by itself, it is not positive law).  However, many states, including Florida have adopted -- not strictly copied -- the suggested Act.  In Florida, the pertinent statutory provisions are found at <u>Fla. Stat.</u> §§ 688.001-.009.  OSTI does not reference the Florida statutory provisions at all, however, the statute indicates that the title may be cited as the "Uniform Trade Secrets Act" (§ 688.001), therefore, for purposes of OSTI's Count V, KAC assumes that OSTI intended to bring a claim under <u>Fla. Stat.</u> §§ 688.001-.009 as opposed to some other state's statutory scheme.  For purposes of clarity, KAC will refer to Florida's "Uniform Trade Secrets Act" as "FUTSA" with the "F" indicating "Florida."

   **A.    Pleading requirements in support of a *prima facie* case of Misappropriation of Trade Secrets.**

To properly state a claim of misappropriation of trade secrets under FUTSA, a party must plead that the "information" at issue meets each element of the statute's definition of a trade secret. *Del Monte Fresh Produce Company v. Dole Food Company, Inc.*, 136 F.Supp.2d 1271, 1292-1293 (S.D. Fla. 2001). Fla. Stat. § 688.002(4) defines a trade secret to mean:

> "…information, including a formula, pattern, compilation, program, device, method, technique, or process that: (a) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."

In addition to pleading that the information at issue meets the definition of a trade secret, a claimant must also plead that the information was "misappropriated" as that term is defined by the statute. Section 688.002(2) defines "misappropriation" in terms of two distinct causes of action; namely, acquisition and disclosure:

> "(a)  Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
>
> (b)  Disclosure or use of a trade secret of another without express or implied consent by a person who:
>
> (1)  used improper means to acquire knowledge of a trade secret; or
>
> (2)  at the time of disclosure or use knew or had reason to know that her or his knowledge of the trade secret was:
>
> (a)  derived from or through a person who had utilized improper means to acquire it;
>
> (b)  acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
>
> (c)  derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or
>
> (3)  before a material change of her or his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake."

If a party seeking relief under FUTSA fails to allege any element of the statutory definition of a trade secret or fails to allege that the information at issue was the subject of an actual misappropriation as defined by the statute, the party has failed to state a claim.  For instance, in *Greenberg v. Miami Children's Hospital Research Institute, Inc.*, 264 F.Supp.2d 1064 (S.D. Fla. 2003), the Court granted a <u>Fed.R.Civ.P.</u> 12(b)(6) motion to dismiss where the pleader failed to meet its burden with respect to both definitions of the statute.  Specifically, the pleader failed, among other things, to allege that the opposing party knew the information was a trade secret or that it knew that it was acquired through improper means.[3]

## B.    Analysis of Count V.

An examination of paragraphs 56-58 of Count V and paragraphs 1-35 of the Amended Counterclaim's general allegations reveal that not all of the *prima facie* elements of a misappropriation of trade secrets claim have been properly pled.  Namely, there is no allegation that KAC knew that OSTI's "proprietary methods and information" were a trade secret, that such information was acquired through improper means, or that it owed any duty to OSTI maintain any alleged secrecy of the "methods and information."

Moreover, OSTI has alleged that KAC "attempts to steal" (para. 23) and "determined to…misappropriate" (para. 24) trade secrets which is, at best, inconsistent with the later allegation that KAC actually "misappropriated" trade secrets (para. 58).

---

[3]   <u>See also</u> *Liberty American Insurance Group, Inc. v. Westpoint Underwriters, L.L.C.*, 199 F.Supp.2d 1271, 1302 (M.D. Fla. 2002)(discussing prima facie elements for theft of trade secrets claim in context of computer program); *Sterpetti v. E-Brands Acquisition, L.L.C.*, 2006 WL 1046949 *9 (M.D. Fla. 2006)(discussing prima facie elements for theft of trade secrets claim); *RX Solutions, Inc. v. Express Pharmacy Services, Inc.*, 746 So.2d 475 (Fla. 2nd DCA 1995)(noting that defendants could have learned how to implement alleged trade secret system without constituting a misappropriation).

Which is it?   Is the allegation that KAC attempted or determined to misappropriate something or is it that KAC actually crossed the statutory line and did misappropriate?

Without proper and consistent allegations to support the misappropriation of trade secrets claim, Count V of OSTI's Amended Counterclaim must be dismissed.

## VIII.    Count VI – Business Disparagement (a/k/a Injurious Falsehood).

There is no tort in Florida known as "Business Disparagement."   However, there is a group of torts in Florida that are recognized under the title of "Injurious Falsehood" which is an umbrella term meant to cover the torts of slander of title, disparagement of property, or trade libel.  *Salit v. Ruden, McCloskey, Smith, Schuster & Russell, P.A.*, 742 So.2d 381, 386-87 (Fla. 4th DCA 1999).  The gist of injurious falsehood is the intentional interference with another's economic relations.  *Id.*

In *Lehman v. Goldin*, 36 So.2d 259, 260 (Fla. 1948), the Florida Supreme Court adopted sections 624-626 of the original Restatement of Torts as the "law applicable" to the tort of injurious falsehood, however, although that Court has never formally adopted the Restatement of Torts (Second) (1977), the two Restatements are close enough that courts in Florida may rely upon the Second Restatement with relative confidence.  *Salit* supra at 387, FN3.

Relying upon Prosser and Keeton's *The Law of Torts* § 128 at 966 (5th ed. 1984), the *Salit* court indicated that Florida's injurious falsehood tort may include the disparagement of a business by reflecting upon that business's existence, character, or the manner in which it is conducted.  *Id.* at 388.

### A.    Pleading requirements in support of a *prima facie* case of Injurious Falsehood.

A *prima facie* case of injurious falsehood requires the pleader to allege that:

1.      its opponent articulated falsehoods about the pleader's business;

2.      the falsehoods were published/communicated by the opponent <u>to third persons</u>;

3.      the opponent knew the falsehoods would likely influence potential purchasers of the pleader's products or services;

4.      the falsehoods played a material and substantial part in inducing others not to purchase the pleader's products or services; and

5.      the pleader suffered <u>special damages</u> <u>*directly and immediately resulting from*</u> the falsehood's effect on third persons which damages <u>must be revealed in the pleading and must be identifiable realized or liquidated losses</u>.  [Emphasis added].

*Salit* <u>supra</u> at 388; <u>see also</u> *Falic v. Legg Mason Wood Walker, Inc.*, 347 F.Supp.2d 1260, 1269 (S.D. Fla. 2004).

The special damages prong of the *prima facie* case <u>requires</u> the pleader to affirmatively allege what specific realized loss it has suffered as a direct and immediate result of the alleged injurious falsehood; failure to do so will result in a dismissal of the claim.  *Salit* <u>supra</u> at 388; *Falic* <u>supra</u> at 1269.

Even where a pleader alleges what it is considers to be actual realized losses, not all categories of loss will withstand the scrutiny of a Motion to Dismiss.  For instance, alleged stock depreciation is not a realized or liquidated loss.  *Salit* <u>supra</u> at 388-89; *Falic* <u>supra</u> at 1269.  Instead, a company must actually reveal in its pleading all realized losses such as identifying the loss of specific customers or transactions as a direct and immediate result of the alleged disparagement.  *Falic* <u>supra</u> at 1270.

**B.      Analysis of Count VI.**

An examination of paragraphs 59-62 of Count VI and paragraphs 1-35 of the Amended Counterclaim's general allegations reveal that not all of the *prima facie* elements of an injurious falsehood claim have been properly pled.  Namely, there is no allegation that KAC or Knight published falsehoods or disparaging words <u>to a third party</u>.

There is no allegation that any falsehoods played a material and substantial part in inducing others not to purchase OSTI's products or services.  There is no allegation of special damages other than OSTI has simply suffered special damages.  This is clearly insufficient as a matter of law since OSTI has failed to plead what specific realized or liquidated loss it has suffered as a direct and immediate result of the alleged disparagement.

As a result of the foregoing pleading deficiencies, Count VI must be dismissed.

## IX.    Damages.

OSTI has failed to demand particularized relief in an *ad damnum* clause at the end of each of the six individual counts alleged in the Amended Counterclaim electing instead to set forth two separate sections dealing with relief; one is entitled "Damages" and the other "Relief Requested."  These sections contain non-differentiated demands for various forms of relief, including attorney's fees and punitive damages, without indicating which specific demands are meant to be related to which substantive counts.

It is not proper to require the Counter-Defendants to have to sort through these non-differentiated damages provisions and speculate about which categories of damages, including demands for punitive damages and attorney's fees, are supposed to match with one, some, or all of the six counts.  OSTI should be required to assert its claims for relief in an organized, clear, and concise manner for each of the counts it has alleged.[4]

**WHEREFORE**, KAC and Knight respectfully request that this Court dismiss OSTI's Amended Counterclaim for failure to state a cause of action and grant Plaintiff such other and further relief that is necessary and just under the circumstances.

---

[4] Counter-Defendants already raised this damages pleading deficiency in their original Motion to Dismiss (Doc. 20; pg. 4), however, OSTI failed to correct the problem in their Amended Counterclaim (Doc. 22; pgs. 15-16).

DATED this 6th day of March 2008.

HOLLIFIELD LEGAL CENTRE
By:
**/s/ Travis R. Hollifield**
_____
Travis R. Hollifield – Trial Counsel
147 E. Lyman Avenue – Suite C
Winter Park, Florida 32789
Telephone: (407) 599-9590
Facsimile: (407) 599-9591
Email: trh@trhlaw.com

LAW OFFICES OF BRIAN S. STEINBERGER, P.A.
Brian S. Steinberger, Esq.
Florida Bar No: 43206
101 Brevard Avenue
Cocoa, Florida 33922
Telephone: (321) 633-5080
Facsimile: (321) 633-9322
Email: brianss@vol.com
AS ATTORNEYS FOR PLAINTIFF/COUNTER-DEFENDANTS

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on March 6, 2008, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

HOLLIFIELD LEGAL CENTRE
By:
**/s/ Travis R. Hollifield**
_____
Travis R. Hollifield – Trial Counsel
147 E. Lyman Avenue – Suite C
Winter Park, Florida 32789
Telephone: (407) 599-9590
Facsimile: (407) 599-9591
Email: trh@trhlaw.com