# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**KNIGHTS ARMAMENT COMPANY,**
     **Plaintiff,**

**-vs-**             **Case No.  6:07-cv-1323-Orl-22KRS**

**OPTICAL SYSTEMS TECHNOLOGY, INC.;**
**OMNITECH PARTNERS, INC.; KEYSTONE**
**APPLIED TECHNOLOGIES, INC.; PAUL F.**
**MAXIN; and JOHN DOES 1-50,**
        **Defendants.**
_____

**OPTICAL SYSTEMS TECHNOLOGY, INC.,**
    **Counterclaimant/Third Party Plaintiff,**

**v.**

**KNIGHTS ARMAMENT COMPANY,**
   **Counterclaim Defendant,**

**C. REED KNIGHT, JR., and BRIAN**
**STEINBERGER,**
    **Third Party Defendants.**
_____

## ORDER

  This cause comes before the Court on a motion by Defendants OmniTech Partners, Inc.

("OmniTech"), Keystone Applied Technologies, Inc. ("Keystone"), and Paul F. Maxin ("Maxin"),

to dismiss Plaintiff's Complaint for lack of personal jurisdiction.  Doc. No. 21.  Plaintiff Knights

Armament Company ("Knights") opposes the motion and simultaneously moves for an expedited

discovery period regarding the motion to dismiss.[1]   Doc. No. 26.   Defendants OmniTech, Keystone, and Maxin oppose the motion for expedited discovery.[2]  Doc. No. 30.

## I.  Introduction

Plaintiff filed a complaint alleging state and federal trademark infringement and unfair competition on August 23, 2007.  Doc. No. 1.  Plaintiff claims that Defendant Optical Systems Technology, Inc. ("OSTI") has used marks that infringe on Plaintiff's state and federally registered marks and that OSTI has applied for federal trademark protection for the allegedly infringing marks.  Doc. No. 1 pp. 5-7.  Plaintiff has also opposed registrations by OSTI that are pending before the Trademark Trial and Appeal Board, and OSTI has moved to cancel some of Plaintiff's registrations.  Doc. No. 1 pp. 4-5.  While Plaintiff's complaint centers around its trademark disputes with OSTI, Plaintiff also named OSTI's president (Maxin) and two companies related to OSTI (OmniTech and Keystone) as defendants in the complaint.  Doc. No. 1 p. 1.  These three defendants now move to dismiss Plaintiff's claims against them under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction.  Doc. No. 21 p. 9.

---

[1]In any future filings, Plaintiff is ordered to refrain from combining responses with its own separate motions.  *See* Local R. 3.01(a), (b).

[2]Defendants Maxin, OmniTech, and Keystone's opposition to Plaintiff's motion (Doc. No. 30) is not limited to the issue of expedited discovery.  Defendants used the opposition to the motion for expedited discovery as an opportunity to reply in further support of their own motion to dismiss.  *See* Doc. No. 30 pp. 2, 4, 7-9.  Such replies are not permitted without leave of court.  Local R. 3.01(c). However, because the question of whether to expedite discovery depends on whether it is necessary to decide personal jurisdiction issues, the Court considers these motions together and accepts the parties' pleadings as they were filed.

## II.  The Law of Personal Jurisdiction

### A.  Burden of Proof and Standard of Review

The Court must first determine whether Plaintiff has made a prima facie showing of personal jurisdiction over the nonresident Defendants that would withstand a directed verdict motion.  *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990) (citations omitted).  The Court must accept Plaintiff's factual allegations as true unless they are disputed by Defendants' affidavits.  *Id*.  If Defendants submit affidavits contrary to Plaintiff's claims of jurisdiction, the burden shifts back to Plaintiff to produce evidence showing that jurisdiction is proper.  *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1215 (11th Cir. 1999).  However, mere conclusory assertions by Defendants that they are not subject to jurisdiction are insufficient to shift the burden back to Plaintiff.  *Id*.  If there are conflicting factual allegations, the Court must construe all reasonable factual inferences in Plaintiff's favor.  *Madara,* 916 F.2d at 1514.

### B.  Personal Jurisdiction

To determine whether the Court has personal jurisdiction over a nonresident defendant, the Court must conduct a two-part analysis.  *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996).  The Court must consider whether a nonresident defendant falls within the reach of Florida's long-arm statute as well as whether the exercise of jurisdiction over the defendant satisfies due process.  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 290-91 (1980).  The reach of the Florida long-arm statute is a question of Florida law, which federal courts are required to construe as the Florida Supreme Court would.  *Sculptchair,* 94 F.3d at 627 (citations omitted).  The Florida Supreme Court has held that an evidentiary hearing is required when there are conflicting factual allegations that prevent determining whether the exercise of jurisdiction is

proper under the long-arm statute. *Venetian Salami Co., v. Parthenais*, 554 So. 2d 499, 503 (Fla. 1989).

The due process requirement is more restrictive than the Florida standard. *Execu-Tech Bus. Sys., Inc. v. New Oji Paper Co., Ltd.*, 752 So. 2d 582, 584 (Fla. 2000). To satisfy the constitutional requirements of due process, jurisdiction must not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945).

There are two types of personal jurisdiction, general and specific. General jurisdiction arises from continuous and substantial contacts with the forum state that are of such a nature "as to justify suit against [the party] on causes of action arising from dealings entirely distinct" from the party's substantial contacts with the forum. *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 446 (1952) (citing *Int'l Shoe*, 326 U.S. at 318-19). Specific jurisdiction is founded on a party's contacts with the forum that are related to the cause of action presented. *Burger King v. Rudzewicz*, 471 U.S. 462, 472-73 (1985). The two-part *Int'l Shoe* minimum contacts due process analysis is used to evaluate specific jurisdiction. *Delong Equip. Co. v. Washington Mills Abrasive Co.,* 840 F.2d 843, 853 (11th Cir. 1988) (citing *Burger King*, 471 U.S. at 472, 473 n. 15).

## C. Florida's Long-arm Statute

Florida's long-arm statute provides that:

> Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself . . . to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
> (a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
> (b) Committing a tortious act within this state.

Fla. Stat. § 48.193(1).[3]  Because this provision addresses causes of action that arise from certain contacts, the provision codifies specific jurisdiction in Florida.[4]  *Delong,* 840 F.2d at 853.

## D. Constitutional Requirements

If jurisdiction exists under Florida's long-arm statute, defendants must still have such minimum contacts with Florida that the exercise of jurisdiction over them would still comport with the requirements of due process.  *World-Wide Volkswagen*, 444 U.S. at 291-92.  To constitute these minimum contacts, the defendant's contacts with the forum must satisfy three criteria:

> First, the contacts must be related to the plaintiff's cause of action or have given rise to it.

> Second, the contacts must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum . . . thus invoking the benefits and protections of its laws.

> Third, the defendant's contacts must be such that the defendant should reasonably anticipate being haled into court there.

_____

[3]Plaintiff also includes Fla. Stat. § 48.193(f) (specific jurisdiction based on injury caused by solicitation) in its discussion of long-arm jurisdiction.  Doc. No. 26 p. 4.  However, a purely economic injury, without some personal injury or property injury, does not support jurisdiction under Fla. Stat. § 48.193(f).  *D.W. Mercer, Inc. v. Valley Fresh Produce, Inc.*, 146 F. Supp. 2d 1274, 1277-78 (M.D. Fla. 2001) (also a trademark case) (citing *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 629 (11th Cir. 1996)).

[4]Plaintiff relies on specific jurisdiction under the Florida long-arm statute (Fla. Stat. § 48.193(1)) to argue that jurisdiction exists over Keystone and Maxin.  *See* Doc. No. 26 pp. 3-4 (citing Fla. Stat. § 48.193(1)).  Plaintiff has not alleged sufficient facts to indicate that Keystone or Maxin have the kind of substantial or continuous contacts with Florida that would give rise to general jurisdiction.  *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984).  Florida's long-arm statute provides for general jurisdiction in section 48.193(2) of the Florida statutes: "A defendant who is engaged *in substantial and not isolated* activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity" (emphasis added).  Neither Maxin nor Keystone are alleged to have engaged in substantial and not isolated activity within the State of Florida.  *See id.*

*SEC v. Carrillo*, 115 F.3d 1540, 1542 (11th Cir. 1997) (citations omitted).

If a defendant has the requisite minimum contacts with the forum state, the Court must then weigh whether the exercise of jurisdiction comports with "fair play and substantial justice." *Madara*, 916 F.2d at 1517 (citing *Burger King*, 471 U.S. at 477-78).  For instance, the Court should look at the burden placed on defendant in having to defend the lawsuit, the forum state's interest in adjudicating the dispute, and the plaintiff's interest in obtaining convenient and effective relief.  *Madara,* 916 F.2d at 1517 (citations omitted).

## III.  Discovery is Not Necessary

Plaintiff has not presented any evidence to rebut Maxin's statements that his connections with Florida have all been on behalf of OSTI, or that he lacks personal or financial ties to Florida. Doc. No. 21 p. 4; Doc. No. 21-2 p. 2.  Instead, Plaintiff argues that it should be entitled to "examine" Maxin regarding other contacts he and the other Defendants might have had with Florida.  Doc. No. 26 pp. 12, 15-16.  Plaintiff also seeks expedited discovery to further investigate the relationship between OmniTech, Keystone, Maxin, and OSTI.  *Id.*  The Florida Supreme Court has held that an evidentiary hearing is required where the parties' affidavits cannot be harmonized. *Venetian Salami*, 554 So. 2d at 503.  Here, it is not the facts that are disputed. Instead, the parties differ over what the facts indicate.  Plaintiff argues that an agency relationship is evident from the OSTI proposal showing that OSTI "reports into" OmniTech and from the fact that OmniTech's website also serves as the website for OSTI and Keystone.  Doc. No. 26 pp. 9-10; Doc. No. 26-5 pp. 2, 10.  OmniTech, on the other hand, argues that these ties do not indicate an agency relationship and that personal jurisdiction is lacking over all defendants except OSTI.  Doc. No. 21 pp. 13-15.  Because the facts themselves are undisputed, an evidentiary hearing is not required

by state law. *Venetian Salami*, 554 So. 2d at 503.  Under federal law, the district court has broad discretion over whether to order expedited discovery or additional fact finding.  *See Washington v. Norton Mfg., Inc.,* 588 F.2d 441, 443 (5th Cir. 1979)[5] (district court has broad discretion to allow discovery on jurisdictional issues).  The Court finds that there are sufficient facts to hold that the Court lacks personal jurisdiction over Maxin, OmniTech, and Keystone.  Thus, expedited discovery is not necessary.

### IV. Defendant Maxin

**A. Facts**

      Maxin is a resident of Pennsylvania and has been president of OSTI since 1996.  Doc. No. 1 at p. 2; Doc. No. 21-2 at p 2.  Plaintiff's owner, C. Reed Knight, Jr., stated in an affidavit that he personally met with Maxin in Florida in 2002, to discuss business and proposed contracts relating to Plaintiff's trademarked products.  Doc. No. 26-6 p. 2.  Plaintiff has also previously engaged in business with OSTI while Maxin was president.  Doc. No. 1 p. 6; Doc. No. 21-2 p. 2.  For instance, in 2005, OSTI served as a subcontractor to a contract with the U.S. government in which Plaintiff was the prime contractor.  Doc. No. 1 p. 6.

---

[5]The Eleventh Circuit in *Bonner v. City of Pritchard*, 661 F.2d 1206, 1207 (11th Cir. 1981), held that all decisions of the Fifth Circuit handed down before October 1, 1981, are binding on district courts in the Eleventh Circuit.

**B. Florida's Long-arm Statute**

Plaintiff's factual allegations fail to constitute a prima facie showing that Maxin is subject to specific[6] jurisdiction in Florida.  Maxin's conduct does not fall within Florida's long-arm statute, because he has not personally committed a tort in Florida (*see* Fla. Stat. § 48.193(1)(b)), nor personally carried on business here (*see* Fla. Stat. §  48.193(1)(a)).  Plaintiff asserts that long-arm jurisdiction is appropriate based on the fact that Maxin met personally with Mr. Knight in Florida to discuss proposed contracts.  Doc. No. 26 p. 12.  However, the fact that Maxin has conducted business in Florida as president of OSTI does not subject him to specific jurisdiction in this trademark and unfair competition suit.

To support specific jurisdiction, the contacts with the forum must give rise to the cause of action.  Fla. Stat. § 48.193(1); *see also Delong*, 840 F.2d at 853.  Plaintiff's causes of action do not arise out of Maxin's single alleged business meeting in Florida with Defendant Knight, even though they discussed Plaintiff's trademarked products.  Doc. No. 26-6 p. 2.  Plaintiff cites *Sculptchair,* 94 F.3d at 631, for the proposition that marketing activities of infringing products were intimately connected to patent and trademark causes of action.  But, here, Maxin and Plaintiff's owner were discussing contracts related to Plaintiff's products, not OSTI's allegedly infringing products.  Doc. No. 26-6 p. 2; Doc. No. 26 p. 12.  Furthermore, the Eleventh Circuit in *Sculptchair* held that it lacked jurisdiction over three individual corporate officers who were residents of Canada and only had jurisdiction over an individual who was a student in Florida and consistently marketed infringing products.  *Sculptchair*, 94 F.3d at 627-28.  Like the corporate

---

[6]As previously stated, Maxin's contacts are not so substantial and continuous that he would be subject to general jurisdiction.  *Delong*, 840 F.2d at 853 (citing *Perkins*, 342 U.S. at 445).

officers in *Sculptchair,* Maxin lacks contacts with Florida that are related to Plaintiff's allegations of trademark competition or unfair competition.  Therefore, the Court lacks specific jurisdiction over Maxin under the long-arm statute.

Nor may jurisdiction rest solely on the fact that Plaintiff was president of OSTI.  "In general, the activities of an officer on behalf of a corporation do not confer jurisdiction over the officer individually."  *Chemtall v. City-Chem, Inc.,* 992 F. Supp. 1390, 1402 (S.D. Ga. 1998) (citations omitted).  While it is true "that personal participation by a corporate . . . officer . . . in the wrongful activities of a corporation is sufficient to make the individual, as well as the corporation, substantially liable for a tort[,]" here Plaintiff has not alleged that Maxin personally participated in the wrongs of the company.[7] *Delong*, 840 F.2d at 851.  Instead, Plaintiff argues that Maxin conducted business on behalf of OSTI in Florida and seeks more information on Maxin's ties to Florida.  Doc. No. 26 p. 12.  "[I]f the claim against the corporate agent rests on nothing more than that he is an officer . . . of the nonresident corporation[,] and if any connection he had with the commission of the tort occurred without the forum state . . . under sound due process principles, the nexus between the corporate agent and the forum state is too tenuous to support jurisdiction over the agent personally . . . under the long-arm statute of the forum state."  *Delong*,

_____

[7]Plaintiff's Complaint alleges that Maxin signed three federal trademark registration applications for the mark STAR TRON on behalf of OSTI, in which Maxin and OSTI allegedly committed fraud on the Patent and Trademark Office by submitting product specimens showing "active trademark registrations that do not exist."  Doc. No. 1 p. 8.  Plaintiff does not raise this fact in opposing Maxin's motion to dismiss for lack of personal jurisdiction, probably because the STAR TRON mark is not alleged to be infringing on any of Plaintiff's marks and thus would not support specific jurisdiction.  *See* Doc. No. 26 p. 12 (registration applications not raised).  Maxin's signature on the allegedly fraudulent registration applications is relevant to the PTO's decision regarding the STAR TRON mark but not to whether specific jurisdiction exists in Florida.

840 F.2d at 852.[8] Thus, the Court lacks personal jurisdiction over Maxin under Florida's long-arm statute.

## C. Constitutional Dimension

Even if Plaintiff had made a prima facie showing that personal jurisdiction over Maxin was appropriate under the long-arm statute, asserting personal jurisdiction over him would still violate due process. Maxin's contacts with Florida are not substantial enough to constitute minimum contacts. *See Burger King*, 471 U.S. at 473-74. Though Maxin met with Plaintiff's owner, this meeting on behalf of his company does not indicate that Maxin has purposefully availed himself of the benefits of Florida law or that he could reasonably expect to be haled into court here. *See Carrillo*, 115 F.3d at 1542.

Plaintiff criticizes Maxin's statement that his contacts with Florida have been limited to business visits for the sole benefit of OSTI, because, according to Plaintiff, this statement is "self-serving and conclusory." Doc. No. 26 p. 12. However, affidavits are by definition self-serving, and Maxin's statement that all contact he has had with Florida has been on behalf of OSTI is clear, not conclusory. Doc. No. 21-2 p. 2. Plaintiff presents no evidence that calls Maxin's claims into doubt. Plaintiff does not allege that Maxin has had any non-business contacts with Florida, nor any contacts specific to the allegations of trademark infringement or unfair competition. Merely because Plaintiff wants to search for facts regarding Maxin's connections with the forum is not

---

[8]Unlike Maxin, the corporate officer defendant in *Delong*, 840 F.2d at 849-50, suggested a conspiracy to restrain trade at a meeting in Atlanta, and that meeting subjected him to antitrust liability and personal jurisdiction. In this case, the single meeting Maxin had with Mr. Knight about potential contracts does not subject Maxin to specific jurisdiction relating to trademark infringement and unfair competition.

sufficient for a prima facie showing of jurisdiction or to rebut Maxin's statements indicating that he lacks the requisite contacts with Florida. *See Posner*, 178 F.3d at 1215.  Thus, Maxin's motion to dismiss Plaintiff's claims against him for lack of personal jurisdiction is granted.

### V.  Defendant OmniTech

**A. Facts**

OmniTech is a Pennsylvania S corporation that was founded in 2003 to hold the stock of OSTI and Keystone.  Doc. No. 21-3 pp. 2-3; Doc. No. 26-5 p. 10.  Plaintiff attempts to make a prima facie showing of personal jurisdiction by claiming that OSTI is an agent of OmniTech and, therefore, that OmniTech is also subject to suit.  Doc. No. 26 pp. 7, 9-10.  Plaintiff points to the fact that OmniTech's website displays marketing materials for OSTI and information on OSTI's products, and that these materials allegedly infringe Plaintiff's trademarks.  *See, e.g.*, Doc. No. 1 pp. 8, 9, 12.

Plaintiff also cites a proposal written by OSTI for the federal government in Florida regarding the allegedly infringing product "Magnum Universal Night Sight." Doc. No. 26-5.  The proposal contains an organizational chart explaining that Keystone and OSTI "report into a holding company, OmniTech[.]" *Id.* at p. 10.  Each page of the proposal lists OSTI as the author, but each page also displays the web address www.omnitechpartners. com.  *See* Doc. No. 26-5.

Plaintiff also alleges that Eugene Pochapsky (vice president of both Keystone and OmniTech) is among the inventors who assigned four patents to OmniTech.  Doc. No. 26 p. 14; Doc. No. 26-10.  According to Plaintiff, this means that "OmniTech, along with its agents OSTI and [Keystone], have together sold and continue to sell in Florida using Plaintiff's trademarks as product identifiers."  Doc. No. 26 p. 14.

**B. Florida Long-arm Statute**

To make a prima facie showing of jurisdiction[9] over OmniTech based on OSTI's alleged

torts, Plaintiff would have to show that an agency relationship exists.  Under Florida law, an

agency relationship exists where (1) the principal acknowledges that the agent will act for it; (2)

the agent accepts the undertaking; and (3) the principal controls the actions of the agent.

*Goldschmidt v. Holman,* 571 So. 2d 422, 424 n. 5 (Fla. 1990).

Plaintiff alleges that "OmniTech, through its apparent 100% stock ownership of its agent

OSTI, appears to have the right to approve, and thus, the right to control, any and all marketing

activity of the products identified in OmniTech's own website."[10]  Doc. No. 26 p. 11. Plaintiff

asserts that an agency relationship exists because OmniTech must approve and control the material

on the website, and that OmniTech benefits because it owns OSTI's stock.  *Id.* However, neither

of these facts evidence an agency relationship.  It is true that a corporation that engages in

substantial activity in a state through a subsidiary is subject to general jurisdiction in Florida.

*Universal Caribbean Establishment v. Bard*, 543 So. 2d 447, 448 (Fla. 4th DCA 1989) (citations

omitted).  Similarly, if a subsidiary is a mere instrumentality, the parent corporation will be subject

---

[9]An agency theory could provide for the exercise of either general or specific jurisdiction over the principal, given the proper contacts. *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1270-71 (11th Cir. 2002) (holding agency theory may apply to general jurisdiction and citing Fla. Stat. § 48.193(1), which states expressly that principals may be subject to specific jurisdiction based on the acts of their agents).

[10]Plaintiff also claims that OmniTech and its agent OSTI donated a night vision sight to Snipercraft, Inc. to be given out at a week-long training event, and that on the Snipercraft website, there is a link to OmniTech's website.  Doc. Nos. 16-7, 26-8, 26-9.  However, that OSTI donated a scope in Florida and that the Florida donee refers to OmniTech's website do not show an agency relationship between OSTI and OmniTech, any more than OmniTech's own website does.  *See* Doc. No. 26-7 p. 3; Doc. No. 26-9 p. 2.

to personal jurisdiction. *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1272-73 (11th Cir. 2002).  But, so long as the "subsidiary's presence in the state is primarily for the purpose of carrying on its own business and the subsidiary has preserved some semblance of independence from the parent, jurisdiction over the parent may not be acquired on the basis of the local activities of the subsidiary." *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1293 (11th Cir. 2000) (citing 4A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1069 (2d ed. 2008)); *compare Meier*, 288 F.3d at 1273 (where the evidence strongly suggested that the subsidiaries were mere instrumentalities).  Plaintiff has presented no evidence that OSTI is a mere instrumentality of OmniTech. Rather, OSTI is a separate entity that has applied for its own trademark registrations and solicited customers in Florida. *See* Doc. No. 1 pp. 5, 7; Doc. No. 26-5 p. 1.

Here, Plaintiff's evidence that the companies are not independent is that they share websites, that OmniTech owns OSTI's stock, and that OmniTech might license products to OSTI. Doc. No. 26-10; Doc. No. 30 p. 10.[11]  These allegations are insufficient to make a prima facie showing of an agency relationship. *See Gen. Cigar Holdings, Inc. v. Altadis, S.A.*, 205 F. Supp. 2d 1335, 1343-44 (S.D. Fla. 2002) (overlapping officers, submission of monthly financial reports to parent, and lack of individual marketing or strategic plan do not subject parent company to jurisdiction under Florida long-arm statute). The "amount of control exercised by the parent must

_____

[11]The statement in OSTI's proposal that OSTI "report[s] into a holding company, OmniTech" does not constitute a prima facie showing of an agency relationship either. Doc. No. 26-5 p. 10. Defendants admit that OmniTech is a holding company, and the shared website does not by itself show a lack of corporate formalities between OmniTech and OSTI. *See Consol. Dev. Corp*, 216 F.3d at 1293.

be high and very significant" to subject a parent company to jurisdiction for the acts of its subsidiary through Florida agency law. *ENIC, P.L.C. v. F.F. South & Co., Inc.*, 870 So. 2d 888, 891 (Fla. 5th DCA 2004) (citations omitted).  Here, neither the stock ownership nor the alleged control of material posted on a website shows that OmniTech has a high degree of control of OSTI's operations. *See id.*  Additionally, license agreements do not necessarily create an agency relationship. *See Mobil Oil Corp. v. Bransford*, 648 So. 2d 119, 120 (Fla. 1995) (no agency relationship existed between licensor and franchise licensee even though licensee used logos and advertisements, sold licensor's products, and received support services from licensor).

## C. Constitutional Dimension

Even if Plaintiff had made a prima facie showing of jurisdiction based on an agency theory, constitutional limits would still prevent this Court from exercising jurisdiction over OmniTech. That OmniTech's website may be viewed in every state is not a sufficient contact with Florida to support specific or general jurisdiction.  A passive website "that does little more than make information available to those who are interested in it is not grounds for the exercise of personal jurisdiction." *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Penn. 1997) (citations omitted).  More interactive websites where users can exchange information with the host may indeed support jurisdiction, depending on the level of interaction and commercial nature of the sites. *Id.*; *but see Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1281 (Fed. Cir. 2005) (holding that even an interactive website available across the country does not necessarily bestow personal jurisdiction, and remanding the case for a new jurisdiction determination).

In this case, OmniTech's website marketed OSTI and its products, but customers could not make purchases through the site. Doc. No. 30 p. 5. Addresses were available on the site to contact OmniTech and OSTI, but there was no exchange between consumers and OmniTech. Doc. No. 26-3 p. 4. That OmniTech may be liable for using allegedly infringing trademarks on its site does not confer jurisdiction on this Court. "[S]omething more than mere liability must exist before the long arm of the state can still reach the individual." *Foxworthy v. Custom Tees, Inc.,* 879 F. Supp. 1200, 1206 (N.D. Ga. 1995). OmniTech's website and the printing of its web address on the OSTI proposal are insufficient to support minimum contacts for personal jurisdiction over OmniTech in Florida. *See Cybersell, Inc. (Arizona) v. Cybersell, Inc. (Florida),* 130 F.3d 414, 419-20 (9th Cir. 1997) (plaintiff alleged that defendant company committed trademark infringement through its website, but the Ninth Circuit Court held that personal jurisdiction did not exist over defendant because the website limited interaction with customers to receiving users' names and addresses); *see also World Triathlon Corp. v. Zefal, Inc.*, No. 8:05cv659, 2006 WL 4690989, at * 3- 4 (M.D. Fla. Apr. 18, 2006) (Florida long-arm statute was satisfied, but due process requirements prevented exercise of jurisdiction over French company whose website displayed but did not sell products with Plaintiff's trademarks, even though French company had unrelated contacts with a supplier in Florida). Thus, OmniTech's motion to dismiss Plaintiff's claims against it for lack of personal jurisdiction is granted.

## VI.  Defendant Keystone

### A. Facts

Keystone is a Pennsylvania corporation that was founded in 2001 to design and develop "new electro-optical surveillance systems, small arms night vision weapon sights, and stabilized gimbaled products" for OSTI.  Doc. No. 26-5 p. 10; Doc. No. 21-3 p. 2.  Keystone shares a business premises with OSTI.  Doc. No. 26-5 p. 10.  Eugene Pochapsky serves as vice president of both Keystone and OmniTech.  Doc. No. 21-3 p. 2.

### B.  Florida's Long-Arm Statute and Constitutional Dimension

Plaintiff has failed to make a prima facie showing of personal jurisdiction over Keystone under the long arm statute or the requirements of due process.  Plaintiff argues that Keystone is also an agent of its parent company, OmniTech, based solely on the relationship between Keystone, OSTI, and OmniTech, their shared website, and shared business premises.  Doc. No. 26 pp. 10-12.  But, these relations fail to show the assent, benefit, and control needed for an agency relationship between Keystone and OSTI.  *See Meier*, 288 F.3d at 1272 ("Plaintiff must persuade the court that the Florida Subsidiaries are the entities through which the [parents] conduct substantial business activity in Florida.").  Except for being a subsidiary of OmniTech and a sister company to OSTI, Keystone is not alleged to have committed any wrongs or have any contact whatsoever with Florida.  While Keystone may design and develop products that OmniTech and OSTI later market and sell with allegedly infringing names (Doc. No. 21-3 p. 2; Doc. No. 26 p. 14; Doc. No. 30 p. 10), Keystone is not an agent of OSTI or OmniTech, nor has it committed a tort or conducted business in Florida.  *See* Fla. Stat. § 48.193(1)(a)-(b).  Thus, Keystone does not fall within the reach of Florida's long-arm statute.

Even if the long-arm statute applied, Keystone's lack of any contacts with Florida means the exercise of personal jurisdiction over it would violate the more restrictive standards established by due process. *Int'l Shoe*, 326 U.S. at 318-19. Thus, Keystone's motion to dismiss Plaintiff's claims against it for lack of personal jurisdiction is granted.

### VII. Conclusion

Based on the foregoing, it is ORDERED as follows:

1. Defendants Omnitech Partners, Inc., Keystone Applied Technologies, Inc., and Paul F. Maxin's Motion to Dismiss (Doc. No. 21), filed February 8, 2008, is GRANTED.

2. The Clerk is directed to TERMINATE Defendants OmniTech Partners, Inc., Keystone Applied Technologies, Inc., and Paul F. Maxin as parties to the action.

3. Plaintiff's Motion for Expedited Discovery (Doc. No. 26), filed February 27, 2008, is DENIED.

**DONE** and **ORDERED** in Chambers, in Orlando, Florida on May 21, 2008.

ANNE C. CONWAY
United States District Judge

Copies furnished to:
Counsel of Record

-17-