**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**KNIGHTS ARMAMENT COMPANY,**

    **Plaintiff,**

-vs-                                                                            Case No. 6:07-cv-1323-Orl-22KRS

**OPTICAL SYSTEMS TECHNOLOGY, INC.; OMNITECH PARTNERS, INC.; KEYSTONE APPLIED TECHNOLOGIES, INC.; PAUL F. MAXIN; and JOHN DOES 1-50,**

    **Defendants.**

_____

**OPTICAL SYSTEMS TECHNOLOGY, INC.,**

    **Counter-claimant/Third Party Plaintiff,**

v.

**KNIGHTS ARMAMENT COMPANY,**

    **Counterclaim Defendant,**

**C. REED KNIGHT, JR.,**

    **Third Party Defendant.**

_____

## ORDER

This cause came on for consideration without oral argument on the following motion:

> **MOTION:** **PLAINTIFF'S FIRST MOTION TO COMPEL DISCOVERY AND DISCLOSURE (Doc. No. 45)**
>
> **FILED:** October 13, 2008
>
> _____
>
> **THEREON** it is **ORDERED** that the motion is **GRANTED** in part and **DENIED** in part.

**I.  BACKGROUND.**

The present case arises from a dispute regarding the manufacturing and marketing of night vision devices for use on military rifles. Defendant Optical Systems Technology, Inc. (OSTI) alleges that in 1996 it developed a night vision device for military rifles that it marked "Universal Night Sight" and "UNS." Doc. No. 22 ¶ 7.  It alleges that it developed additional devices using the same or similar technology that it marked "Magnum Universal Night Sight" or "MUNS," and "Dualband Universal Night Sight" or "DUNS." *Id.* ¶¶ 8, 9.

OSTI further alleges that in 1997, it approached Plaintiff Knights Armament Company (KAC) about working together to market the devices that OSTI had developed.  KAC is a major supplier of special operations weaponry components and rifles.  OSTI alleges that at the time it first contacted KAC, KAC did not market a device similar to the one OSTI had developed. *Id.* ¶ 14.  Third-Party Defendant C. Reed Knight, Jr. is the owner of KAC. *Id.* ¶ 15.

OSTI alleges that it permitted technical representatives and executives of KAC, including Knight, to visit its research and manufacturing facilities and provided access to proprietary information about its devices. *Id.* ¶ 16.  OSTI alleges that it took steps to protect its proprietary information and that it did not authorize KAC to manufacture any components of the night vision devices. *Id.* ¶ 18.  OTSI further alleges that its "business methods, know-how, machines,

manufacturing processes and procedures, marketing information, pricing data, product designs and manufacturing information, supplier and vendor lists, technical information, and technical drawings are trade secrets within the meaning of the Uniform Trade Secrets Act." *Id.* ¶ 57.

KAC alleges that it previously engaged in business with OSTI on a U.S. Government contract, and that both parties worked together on design and engineering work on optical scopes. Doc. No. 1 ¶ 25. It alleges that KAC and OSTI are now competitors with respect to these devices. *Id.* KAC alleges that it owns federal registered trademarks for the marks *UNS, KNIGHTSCOPE, UNIVERSAL KNIGHTSCOPE*, and *UKS,* and Florida registered trademarks for the marks *UNS* and *Universal Night Sight*. *Id*. ¶¶ 13-18.

OSTI contends, however, that KAC is improperly using its technology, marks and trade dress to market competing night vision products. Doc. No. 22 ¶¶ 27-29. OSTI alleges that KAC fraudulently registered the federal trademarks. The dispute is pending before the Trademark Trial and Appeal Board (TTAB), but that board suspended proceedings after this case was filed. Doc. No. 22 ¶¶ 30-32, 34.

Both KAC and OSTI bring causes of action for trademark infringement and unfair competition under the Lanham Act and common-law unfair competition. KAC also asserts false advertising under the Lanham Act and Florida law, Florida trademark infringement, and deceptive and unfair trade practices under Florida law. OSTI also alleges misappropriation of trade secrets and business disparagement. OSTI seeks a declaratory judgment that it created the technology for and owns the trade dress and marks associated with the night vision devices.

**II.     THE PRESENT DISPUTE.**

On February 25, 2008, KAC served its first request for production of documents and first set of interrogatories on OSTI. In its initial responses to the discovery requests served in April 2008, OSTI agreed to produce certain information after the parties entered into a confidentiality agreement. It also asserted privilege and/or protection objections to request for production numbers 24, 26 and 27. However, OSTI did not produce a privilege log pursuant to Fed. R. Civ. P. 26(b)(5) and my Standing Order Regarding Privilege Logs ("Standing Order")[1].

Thereafter, the parties entered into a confidentiality agreement. Doc. Nos. 45-2 and 42-3. This agreement, which was not approved by the Court[2], allows parties to designate information produced in discovery as Confidential or Attorneys' Eyes Only. Confidential information may be disclosed only to "Qualified Persons," defined as the parties, their counsel, experts, support personnel and the Court. Attorneys' Eyes Only information may be disclosed only to counsel of record, experts, support personnel, and the Court. The agreement provides a mechanism to object to the designations and, if not resolved, to seek a ruling from the Court regarding the proprietary of a designation.

OSTI subsequently produced documents with numerous confidentiality designations and redactions. Following the procedure in the confidentiality agreement, KAC objected to those designations and redactions. Some of the matters at issue were resolved, but disputes remain.

---

[1] The Standing Order Regarding Privilege Logs (M.D. Fla. June 7, 2007) is found online at http://www.flmd.uscourts.gov – Judicial Info – Judge Spaulding – Standing Orders – Standing Order Regarding Privilege Logs.

[2] The Court notes that paragraph 9 of the agreement requires the parties to file Confidential or Attorneys' Eyes Only information with the Court under seal. Counsel are reminded that documents may not be filed under seal except upon motion and the showing required by M.D. Fla. Local Rule 1.09.

OSTI also provided unverified supplemental responses to interrogatories. It designated these supplemental responses as Attorneys' Eyes Only. Doc. No. 45 at 5. KAC objected both to the lack of verification, the Attorneys' Eyes Only designation as to the supplemental response to interrogatory 21, and the sufficiency of the supplemental response to interrogatory 21. After the motion was filed, OSTI agreed to redesignate the supplemental response to interrogatory 21 as Confidential. The dispute regarding the lack of verification and the sufficiency of the supplemental response remain unresolved.

The present motion was filed to address the remaining disputes. OSTI has responded to the motion, Doc. No. 47, and KAC has filed a reply memorandum with leave of Court, Doc. No. 50. The matter is now ripe for resolution.

### III.   ANALYSIS.

*A.   Good Faith Conferences Under Local Rule 3.01(g).*

Local Rule 3.01(g) requires counsel to confer before filing discovery motions. The Case Management and Scheduling Order states that "[t]he term 'confer' in Rule 3.01(g) requires a substantive conversation *in person or by telephone* in a good faith effort to resolve the motion without court action and does not envision and exchange of ultimatums by fax or letter." Doc. No. 29 at 5. The present motion reflects that conferences occurred (except in one limited instance) through letter and e-mail, which is insufficient to satisfy the requirement of Rule 3.01(g). Because the motion is ripe for resolution, I will not require a further good faith conference at this time except as indicated herein. However, in the future, any motion that does not include a certification that counsel spoke to each other about all issues presented before the motion was filed is likely to be denied without

reaching the merits of the issues presented.

    *B.*    *Interrogatories*.

        1.    <u>Supplemental Interrogatory Responses Must Be Verified</u>.

OSTI contends that there is no authority supporting the requirement that it verify its supplemental response to an interrogatory when the original response has been verified. Federal Rule of Civil Procedure 33 requires that, to the extent an interrogatory is not objected to, the interrogatory must be answered "separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). Federal Rule of Civil Procedure 26(e) requires a party to supplement or correct its interrogatory answers if the party learns that the response is incomplete or incorrect and the corrective information has not otherwise been made known to the other party. Fed. R. Civ. P. 26(e)(1).

Although it appears that the United States Court of Appeals for the Eleventh Circuit has not addressed whether supplemental interrogatory responses must be verified, Rule 33 is commonly interpreted as requiring all interrogatory answers, whether initial or supplemental, to be signed under oath. *See e.g., CC-Aventura, Inc. v. Weitz Co., LLC*, No. 06-21598-CIV, 2008 WL 691687, at *2 (S.D. Fla. March 12, 2008)(requiring verified supplemental response to interrogatory); *Price v. Gwinnett Family Dental Care, LLC*, No. 1:06-CV-2659-BBM-GGB, 2007 WL 3477771, at *1 (N.D. Ga. Oct. 31, 2007)("Defendant is also entitled to supplemental responses to its interrogatories, which will conclusively establish that no additional recordings were made. Interrogatory responses, unlike representations made in a brief, must be made under oath.").

The purpose of verifying interrogatory responses is to have the party attest to the truth of the responses. Thus, if a party amends or supplements its response, the party must attest to the

truthfulness of the new response. Therefore, OSTI must verify its supplemental responses to interrogatories.

### 2. Adequacy of the Response to Interrogatory 21.

In interrogatory 21, KAC requested the following:

> Please describe with particularity each and every business method, know-how, machine, manufacturing process and procedure, marketing information, pricing data, product designs and manufacturing information, supplier and vendor list, technical information, and technical drawing that KAC allegedly misappropriated as alleged in paragraphs 57-58 of Defendant OSTI's Amended Counterclaim, what steps if any OTSI took to maintain the secrecy of the misappropriated items, when the item(s) was misappropriated, when OSTI became aware of the misappropriation, and the method(s) allegedly used by KAC to misappropriate the item(s).

Doc. No. 45 at 14.

OTSI originally responded as follows:

> OSTI objects to this interrogatory as seeking confidential, proprietary, commercially sensitive, and/or trade secret information. OSTI will supplement once a confidentiality agreement is fully executed.

*Id.* at 14-15. OTSI went on to describe the methods it uses to protect all confidential, proprietary, commercially sensitive and trade secret information. It also described the access KAC received to "certain of such information, including but not limited to OSTI's UNS drawings during the time OSTI was supplying UNS products to [KAC] for sale to the Government . . . ," among other things. *Id.* at 15. In the supplemental response, KAC reiterated the procedures it used for protection of confidential, proprietary, commercially sensitive and trade secret information. It then described generally the documents provided to KAC that allegedly contained OSTI's confidential and

proprietary information, identified four components of the devices to which its trade secrets relate and expanded upon the procedures it uses to protect the information.

KAC contends that OSTI's response is insufficient to identify its trade secrets. OSTI responds that it is merely required to describe its trade secrets with "reasonable particularity." It contends that requiring OSTI to divulge its trade secrets in detail to KAC, one of its competitors, would cause OSTI irreparable harm. Doc. No. 47 at 2.

It is axiomatic that a party may not assert a cause of action for misappropriation of trade secrets without identifying for the opposing party the trade secrets at issue. *See Del Monte Fresh Produce Co. v. Dole Food Co.*, 148 F. Supp. 2d 1322, 1324-25 (S.D. Fla. 2001). Because OTSI chose to bring a claim for misappropriation of trade secrets, it must identify the trade secrets it contends were wrongfully appropriated. A detailed protective order has been negotiated by the parties permitting disclosure of the information in a manner that will reasonably safeguard its confidentiality.

The court in *Del Monte Fresh Produce Co.* set forth a working definition of "reasonable particularity" in identifying allegedly misappropriated trade secrets. As that court noted, it is insufficient to describe the trade secrets by generic category, such as the components of the night vision devices to which the alleged trade secrets relate. Rather, OTSI must identify the specific characteristics of each trade secret, such as a particular drawing, process, procedure or cost/pricing data. It must also describe with reasonable particularity all of its trade secrets, including those involving "business methods, know-how, machines, manufacturing process and procedure, marketing information, pricing data, product designs and manufacturing information, . . .[and] supplier and vendor lists" as alleged in the amended counterclaim.

Accordingly, OSTI will be required to serve a sworn supplemental answer to interrogatory 21 setting forth all of the trade secrets it contends were misappropriated with reasonable particularity as required by the *Del Monte Fresh Produce Co.* decision.

        3.        <u>Attorneys' Eyes Only Designation of the Supplemental Response</u>.

OSTI has agreed to redesignate its supplemental response to interrogatory 21 as Confidential, and the response is, therefore, redesignated as such.[3] Because the supplemental response provides general information, it is unclear what basis exists for even a Confidential designation. However, because an additional supplemental response is required, the Court need not resolve the issue of the propriety of the Confidential designation at this point.

Counsel are reminded that any party wishing to designate information as Confidential or Attorneys' Eyes Only bears the burden of supporting that designation with good cause as required by Rule 26(b)(5). The confidentiality agreement is not evidence that good cause exists. Rather, the party seeking to designate information must establish that the information is entitled to protection based on evidence and controlling law.

    C.    *Request for Production of Documents*.

        1.        <u>Redaction of Sales Information</u>.

KAC asserts that OSTI has redacted the revenue figures for the sale of the night vision devices at issue in the lawsuit from documents produced in discovery. Doc. No. 45 at 4. OTSI agreed to produce the redacted information if KAC agrees not to permit Brian S. Steinberger, Esq., counsel of record for KAC, to view the unredacted information.

---

[3] The supplemental response to interrogatory 21 will remain under seal until the conclusion of the litigation, at which point the Clerk of Court is directed to return it to counsel for the filing party.

The confidentiality agreement negotiated by the parties does not contemplate precluding Steinberger from viewing any information, whether designated Confidential or Attorneys' Eyes Only. OSTI did not seek a protective order to preclude Steinberger from looking at the redacted information. Finally, OSTI's unsworn arguments in its response to the motion are insufficient to establish good cause to preclude Steinberger from viewing the redacted information despite OTSI's failure to negotiate such a limitation in the confidentiality agreement or timely seek a protective order.

Accordingly, OSTI will be required to disclose the redacted information. It may designate the information previously redacted as Attorneys' Eyes Only for the purposes of initial disclosure if it deems it appropriate to do so. However, should the issue be presented to the Court again, OSTI will bear the burden of supporting this designation with a showing of good cause.

        2.        <u>Waiver of Privileges and Protections</u>.

On June 7, 2007, I issued a Standing Order applicable to all cases in which I am the assigned Magistrate Judge. The Standing Order is published on the Court's website and was in effect at all relevant times during this litigation. The papers reflect that counsel for the parties were aware of that Standing Order.

The Standing Order requires parties to serve a privilege log simultaneously with the response to a written discovery request. The Standing Order further requires the privilege log to contain the following information:

        a.        The name and job title or capacity of the provider of the information or author of the document;
        b.        The name and job title or capacity of each recipient of the information or document;

    c.      The date the information was learned or the document was prepared and, if different, the date(s) on which it was sent to or shared with persons other than its provider(s) or author(s);
    d.      The title and/or description of the information or document;
    e.      The subject matter addressed in the information or document;
    f.      The purpose(s) for which it was prepared or communicated; and
    g.      The specific basis for the claim that it is privileged or protected.

If a party challenges its opponent's claim of privilege or protection, the Standing Order requires the party asserting the privilege or protection to provide the following: (1) a memorandum of law discussing the elements of each privilege or protection asserted; (2) the privilege log for the documents at issue; and, (3) an appendix containing "affidavits, deposition testimony, other sworn statements or other evidence" upon which the party relies to support each element of each asserted privilege or protection in dispute.

OSTI did not provide its privilege log to KAC until approximately October 24, 2008, which was more than six months after it served its initial written response to the request for production of documents and after KAC filed its motion to compel. Doc. No. 47 at 2. OSTI argues that its failure to serve a privilege log timely should not be construed as a waiver because KAC did not confer regarding the privilege log prior to filing its motion. *Id.* at 6. A good faith conference is not a prerequisite to production of a privilege log timely as required by the Federal Rules of Civil Procedure and my Standing Order.

Further, the belated produced privilege log, Doc. No. 47-2, and memorandum in opposition to the motion to compel are insufficient to establish a *prima facie* case of privilege or protection. First, OSTI has not discussed the elements of the asserted privilege or protection or shown how the

-11-

disclosures on the log support each element. With respect to the assertion of work product protection, the privilege log does not always identify the anticipated litigation to which the withheld document pertains. With respect to the attorney-client privilege, there is no evidence that the communications were made in confidence or whether attorneys who were also officers of OSTI were acting in their legal or business capacities.

It appears, however, that counsel for the parties have not conferred in a good faith effort to determine whether any of the listed documents are even relevant to the issue in dispute. Accordingly, the Court will require counsel to confer in a good faith effort to determine whether this dispute can be resolved. If it cannot, then KAC may file a renewed motion to compel production of the allegedly privileged and protected documents supported by a showing why each document likely is relevant or may lead to the discovery of admissible evidence. OSTI must respond to any renewed motion with (1) evidence and law establishing that each privilege and protection asserted is supported by fact and law; (2) a showing that each document is responsive to a particular request for production to which OSTI asserted the applicable privilege or protection in the response thereto; and, (3) evidence and law that supports a finding that the privileges and protections were not waived despite the untimely assertion of the privileges and protections (if any) and untimely production of the privilege log.

D.   *Award of Attorneys' Fees.*

KAC seeks an award of the reasonable attorneys' fees it expended in filing the motion to compel. Doc. No. 45 at 17. OSTI did not specifically address this request.

Federal Rule of Civil Procedure 37 provides that when a motion to compel is granted in part and denied in part, the Court may apportion the reasonable expenses for the motion among the parties.

As to the present motion, KAC was granted the relief it sought, except with respect to the privilege and protection issue which the Court has deferred ruling on pending a further conference among the parties.  Under these circumstances, and for the reasons discussed herein, I find that some award to KAC is appropriate because of the expenses it incurred in filing the present motion.  Accordingly, OSTI will be required to pay KAC the sum of $1,000.00 to compensate it, in part, for the attorneys' fees and costs incurred in filing the present motion.

**IV.    CONCLUSION.**

Accordingly, it is **ORDERED** as follows:

1. OSTI shall serve sworn supplemental responses to interrogatories on or before December 19, 2008;

2. OSTI shall serve unredacted sales information on or before December 19, 2008;

3. On or before December 5, 2008, lead counsel for the parties shall confer in person or by telephone in a good faith effort to resolve the dispute regarding the allegedly privileged and protected documents.  If the matter is not resolved, KAC may renew the motion to compel production of these documents before the close of discovery; and,

4. On or before December 19, 2008, OSTI shall tender to counsel for KAC the sum of $1,000.00.

Counsel and the parties are cautioned that failure to comply with a pretrial order of the Court, such as this one, may result in imposition of additional sanctions as described in Federal Rules of Civil Procedure 16(f) and 37(b)(2)(A)(ii)-(vii).

**DONE** and **ORDERED** in Orlando, Florida on November 20, 2008.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE